Andree J. QUENOT,
Petitioner-Appellant,

v.

IOWA DEPARTMENT OF JOB SERVICE and Senack Shoes of Iowa, Inc., Respondents-Appellees.

No. 2–69590.

Court of Appeals of Iowa.

Aug. 30, 1983.

Diane L. Dornburg, Des Moines, for petitioner-appellant.

Blair H. Dewey, Walter F. Maley and Joseph L. Bervid, Iowa Dept. of Job Service, Des Moines, for respondents-appellees.

Considered by OXBERGER, C.J., and DONIELSON, SNELL, SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

Claimant appeals from a judgment of the district court affirming the respondent-agency's finding that claimant is not entitled to unemployment compensation. We reverse.

Andree Quenot was employed at Senack Shoes as a sales clerk. On April 21, 1981, she went home without informing her employer of any problem. She did not report back to work the next day. Several days later claimant was hospitalized as she was apparently having a nervous breakdown. She was in and out of the hospital until the end of July when she was released by her doctor to return to work. Claimant did not inform her employer of the reason for her absence until late June when she allegedly first became aware that she was absent from her job. Upon returning to her employer claimant was told that there was no work available for her.

When the notice of Ms. Quenot's claim for unemployment compensation was sent to her employer, Senack returned the notice stating that claimant had been discharged on April 21 for low productivity. The employer did not participate in the proceedings before the agency or in subsequent judicial review.

Claimant was denied benefits on the grounds that she voluntarily quit her job

without good cause attributable to her employer.

■ Judicial review of administrative agency action is limited by Iowa Code § 17A.19(8). We are bound by Job Service's findings of fact if they are supported by substantial evidence. Evidence is substantial if a reasonable mind could accept it as sufficient to reach the same findings. The fact that a different conclusion could also have been reached is irrelevant. *New Homestead v. Iowa Department of Job Service,* 322 N.W.2d 269, 270 (Iowa 1982). The court is not, however, bound by the agency's legal conclusions; it can correct misapplications of the law. *Green v. Iowa Department of Job Service,* 299 N.W.2d 651, 655 (Iowa 1980); *Cook v. Iowa Department of Job Service,* 299 N.W.2d 698, 701 (Iowa 1980).

Iowa Code § 96.5 lists the grounds for denial of unemployment benefits and provides:

> 1. Voluntary quitting. If he or she has left his or her work *voluntarily* without good cause attributable to his or her employer, if so found by the department. But he or she shall not be disqualified if the department finds that:
>
> \*     \*     \*     \*     \*     \*
>
> d. The individual left employment because of illness, injury or pregnancy upon the advice of a licensed and practicing physician, and upon *knowledge* of the necessity for absence immediately notified the employer, or the employer consented to the absence, and after recovering from the illness, injury or pregnancy, when recovery was certified by a licensed and practicing physician, the individual returned to the employer and offered to perform services and the individual's regular work or comparable suitable work was not available, if so found by the department, provided the individual is otherwise eligible. (emphasis added).

Claimant maintains that she did not voluntarily leave her job and, alternatively, even if she did voluntarily leave she is not disqualified from receiving benefits since she complied with the requirements of subparagraph d.

The statute does not define voluntary, but the administrative regulations provide: "In general, a voluntary quit means discontinuing the employment because the employee no longer desires to remain in the relationship of an employee with the employer from whom the employee has separated." 370 Iowa Administrative Code § 4.25(96). This definition indicates that the quit must result from a choice on the part of the employee and not be the product of a mental illness which takes away the employee's free will.

The supreme court has not had many occasions to interpret what constitutes the requisite voluntariness within the meaning of the statute. In *Moulton v. Iowa Employment Security Commission,* 239 Iowa 1161, 1165, 34 N.W.2d 211, 213 (1948), the court held that physical disability due to pregnancy was voluntary since the condition was due to the employee's own deliberate act and choice.[1] In *Huntoon v. Iowa Department of Job Services,* 275 N.W.2d 445, 448 (Iowa 1979), the court determined that misconduct requires a volitional act. There the court repudiated the idea that the physical condition must be voluntary and instead suggested that only the conduct resulting from the condition must be voluntary. The court stated that a "failure in good performance which results from inability or incapacity is not volitional and is thus not misconduct." In *Huntoon* the court indicated that alcoholism, which so severely impairs the individual that he is unable to perform the required work, would not constitute grounds for misconduct.

■ Under either interpretation the claimant in this case did not act voluntarily. She did not deliberately choose to have a nervous breakdown nor was she able to

---

1. The result in *Moulton* was modified when the statute was amended to include pregnancy within § 96.5(1)(d). *Area Residential Care,* *Inc. v. Iowa Department of Job Service,* 323 N.W.2d 257, 258 (Iowa 1982).

control her conduct during the time she was ill. It cannot be said that a person who is so mentally disturbed as to be unaware of his or her surroundings is acting voluntarily.

■ Furthermore, we believe that claimant is not disqualified from receiving benefits because she falls within § 96.5(1)(d). The controversy in this case centers around claimant's failure to give notice of her illness and absence. It is undisputed that apart from the notice requirement claimant would qualify for benefits under this section. The statute requires immediate notice as soon as the employee has knowledge of the necessity for being absent. Claimant in this case was undeniably ill. She was hospitalized for several months with a mental breakdown. The only evidence in the record is claimant's testimony and a brief letter from her physician. Both claimant and her doctor assert that claimant was mentally incapable of informing her employer of her absence. She was so incapacitated that she was unaware that she had a job or that she was absent from work. In late June when she had recovered sufficiently to be cognizant of her job she immediately called her employer, even though she was not yet able to return to work. The record clearly shows, without dispute, that claimant lived alone. She had no husband or family, and no one available to act in her behalf to notify her employer of her illness, incapacity and hospitalization.

Viewing the whole record, we do not find substantial evidence to support the agency's conclusion. The only evidence before the agency indicates that claimant notified her employer as soon as she had knowledge of the necessity of her absence. When all the available evidence indicates that claimant was severely mentally ill from the time she left work until she contacted her employer, it is not sufficient to base a conclusion on speculation that claimant could have notified her employer earlier.

REVERSED.