CONTRACT SERVICES, LTD., Appellant,

v.

IOWA DEPARTMENT OF JOB SERVICE, Appellee.

No. 84–1618.

Supreme Court of Iowa.

July 31, 1985.

Timothy D. Roberts and Elmer M. Jones of Pryor, Riley, Jones & Aspelmeier, Burlington, for appellant.

Joseph L. Bervid, Walter F. Maley & Blair H. Dewey, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

CARTER, Justice.

Petitioner, Contract Services, Ltd., an employer liable for unemployment insurance contributions under Iowa Code chapter 96, appeals from a district court decision upholding the determination of Iowa Department of Job Service that petitioner must assume the contribution rate of a predecessor employing unit whose business it acquired. Petitioner asserts that the respondent agency applied an incorrect legal standard in determining that it was a "successor employer" so as to trigger the application of Iowa Code sections 96.7(3)(b) and 96.19(5)(b). In the alternative, it is contended that the agency's determination of "successor employer" status is not supported by substantial evidence in the record made before the agency when that record is viewed as a whole. We find no basis for upsetting the agency's determination under either of petitioner's theories and affirm the decision of the district court.

On March 26, 1983, petitioner entered into an agreement with Contract Cleaners, Inc., an Iowa corporation with its principal place of business in Burlington, for acquisition of certain assets owned by the latter corporation or its parent corporation, Bonewitz Chemical Services, Inc. Petitioner was to acquire from Contract Cleaners, Inc. an assignment of the interest which that entity had in its existing service contracts for the performance of industrial cleaning services for meatpacking companies.

Four of these contracts were with Swift Independent Packing Company at its Dumas, Texas; Hereford, Texas; Guymon, Oklahoma; and Des Moines, Iowa plants. Two contracts were with George A. Hormel & Company at its Ottumwa, Iowa and Knoxville, Iowa plants. Three contracts were with Iowa Beef Processors, Inc. at its Pasco, Washington; Emporia, Kansas; and Joslin, Illinois plants. Two contracts were with Excel Corporation at separate plant locations in Rockport, Missouri. The remaining contracts were with Midwest Animal Products in Omaha, Nebraska and Monfort Packing Company in Grand Island, Nebraska. In addition to the foregoing contracts for cleaning services, valued at $219,000, the petitioner acquired tools from Contract Cleaners, Inc. valued at $36,000 and an airplane from the parent corporation, Bonewitz Chemical Services, Inc., valued at $90,000. The total consideration to be paid by petitioner for all of these assets was $345,000. After transfer of these assets from Contract Cleaners, Inc. to petitioner, the assets remaining on the balance sheet of the transferor were cash in the sum of $313,741, accounts receivable of $85,666, prepaid insurance valued at $31,300 and copying equipment valued at $1390.

The evidence revealed that the anticipated gross sales revenue to be realized upon performance of the assigned contracts during the remainder of 1983 was $5,435,716.

The assignment of the contracts to petitioner was subject to approval by the individual meatpacking companies for whom the services were to be performed. Such approval was secured with respect to all but one of the contracts. Three executives of the transferor, Edward Bonewitz, Steven Sanders, and Alfred Moeller became the managing employees of petitioner. The contract provided that the transferor would encourage its other employees to accept employment with petitioner. Of eighty Iowa production employees of Contract Services, Ltd., fifty-five were rehired by petitioner. The remaining twenty-five positions were filled as needed from persons contacted through the Iowa Department of Job Service. In order to meet anticipated payrolls, it was necessary for the shareholders of petitioner to inject approximately $250,000 additional cash into the corporation soon after it undertook completion of the assigned contracts.

As a result of the foregoing facts and other considerations which we discuss later in connection with the legal issues presented, the Iowa Department of Job Service determined that petitioner was a "successor employer" required to assume the unemployment insurance contribution rate of Contract Cleaners, Inc. This determination was based upon the agency's interpretation of Iowa Code sections 96.7(3)(b) and 96.19(5)(b). Those statutes provide in part:

In any case in which the enterprise or business for which contributions have been paid has been sold or otherwise transferred to a subsequent employing unit, or in any case in which one or more employing units have been reorganized or merged into a single employing unit and the successor employer continues to operate such enterprise, such successor employer shall assume the position of the predecessor employer or employers with respect to such predecessors' payrolls, contributions, accounts and contribution rates to the same extent as if there had been no change in the ownership or control of such enterprise or business.

Iowa Code § 96.7(3)(b).

"*Employer*" means:

. . . .

Any employing unit ... which acquired the organization, trade, or business, or substantially all of the assets thereof, of another employing unit which at the time of such acquisition was an employer subject to this chapter, or which acquired a part of the organization, trade, or business of another employing unit which at the time of such acquisition was an employer subject to this chapter.

Iowa Code § 96.19(5)(b). This determination was upheld by the agency following a contested case hearing on petitioner's protest. The final agency action was affirmed by the district court on a petition for judicial review.

I. *Whether Respondent Agency Applied Correct Legal Standard in Its Determination of "Successor Employer" Status.*

The petitioner claims that the agency applied an incorrect legal standard in determining that it was an employing unit which had acquired the organization, trade, or business of Contract Cleaners, Inc. Its primary argument in this regard is that the assets which it acquired from Contract Cleaners, Inc. represented only $255,000 of a total asset value of $468,497. It urges that this does not represent a sufficient proportion of the total assets of the transferor to qualify the transferee as a "successor employer" under the legal standard which this court applied in *Spagnola v. Iowa Employment Security Commission*, 237 Iowa 645, 23 N.W.2d 433 (1946). We are convinced that *Spagnola* does not support petitioner's claim in this regard.

In determining "successor employer" status under Iowa Code section 96.19(5)(b), the acquisition of (a) "the organization, trade, or business" of the transferor, or (b) "substantially all of the assets" of the transferor are alternative tests. In the *Spagnola* case, it was stipulated by the agency that the employing unit had not acquired "the organization, trade, or business" of the predecessor employing unit. As a result, the only ground on which to

assert the claim of "successor employer" status in that case was that substantially all of the assets of another employing unit had been acquired. Because only a small proportion of the total assets of the predecessor employing unit had in fact been transferred to the successor company in *Spagnola,* we held that the requirement of "substantially all of the assets" had not been satisfied. *Id.* at 647, 23 N.W.2d at 435.

Unlike *Spagnola,* the primary thrust of the agency's contention in the present case is that petitioner acquired "the organization, trade, or business" of Contract Cleaners, Inc. In making that determination, the agency applied 370 Iowa Admin.Code § 3.28(2) which provides:

An "organization", "trade" or "business" as used in section 96.19(5) "b" is acquired if an employing unit acquires factors of an employer's organization, trade or business sufficient to constitute an entire existing going business unit as distinguished from the acquisition of merely assets from which a new business may be built. The question of whether an organization, trade or business is acquired is determined from all the factors of the particular case. Among the factors to be considered are:

*a.* The place of business.
*b.* The staff of employees.
*c.* The customers.
*d.* The good will.
*e.* The trade name.
*f.* The stock in trade.
*g.* The accounts receivable.
*h.* The tools and fixtures.
*i.* Other assets.

■ Allowing petitioner a new stabilization period in the present case would result in its contribution rate being substantially lower than that which Contract Cleaners, Inc. would have been required to pay for doing the same work with substantially the same employees. We stated in *Burlington Truck Lines, Inc. v. Iowa Employment Security Commission,* 239 Iowa 752, 756, 32 N.W.2d 792, 795 (1948) that the purpose of these statutes is "to avoid requiring the

commencement of a new stabilizing period where there is continuity of operation in spite of the transfer." We believe the agency's interpretation of the statutes in the present case fosters this purpose and is in accord with the intent of the legislature. Under that interpretation, a finding of "successor employer" status is not to be made by an inflexible, mechanical application of either the statute or the regulations but rather upon a determination of whether, by reason of the transfer, the transferee enjoys a substantially similar capacity to carry on a business operation similar to that of the transferor. Support for this interpretation may also be found in the decisions of courts from other states which have considered similar legislation. *See, e.g., Levy v. Arizona Department of Economic Security,* 132 Ariz. 1, 643 P.2d 704 (1982); *Harris v. Egan,* 135 Conn. 102, 60 A.2d 922 (1948); *Ekco Products Co. v. Cummins,* 5 Ill.2d 307, 125 N.E.2d 526 (1955); *Astral Industries, Inc. v. Indiana Employment Security Board,* Ind.App., 419 N.E.2d 192 (1981); *Cornwall Industries, Inc. v. Maine Department of Manpower Affairs,* 351 A.2d 546 (Me.1976); *Mid-America Festivals Corp. v. Commissioner of Department of Economic Security,* 349 N.W.2d 270 (Minn.1984); *RSMJ, Inc. v. Employment Division,* 286 Or. 227, 596 P.2d 909 (1979). We find no merit in petitioner's assertion that the agency's decision was induced by the misapplication of controlling principles of law.

II. *Whether Agency Decision is Supported by Substantial Evidence.*

■ In reviewing petitioner's contention that the agency decision is not supported by substantial evidence, we apply the standard that evidence is "substantial" if a reasonable mind would accept it as adequate to reach a given conclusion. *Rockwell Graphic Systems, Inc. v. Prince,* 366 N.W.2d 187, 190 (Iowa 1985); *Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87, 91 (Iowa 1982). The possibility of drawing two inconsistent conclusions from the record does

not prevent an agency's findings from being supported by substantial evidence. *Messina v. Iowa Department of Job Service*, 341 N.W.2d 52, 59 (Iowa 1983).

The main thrust of petitioner's challenge to the evidentiary support for the agency's conclusions concerns whether it acquired an existing business or merely acquired assets from which a new business might be built. Petitioner asserts that the evidence requires, as a matter of law, a finding of the latter rather than the former. We disagree. Much of petitioner's argument flows from the fact that in terms of dollar value a high proportion of the asset side of the balance sheet of Contract Cleaners, Inc. remained with that company following the transfer. This was of course true with respect to the highly liquid assets such as cash, accounts receivable and prepaid insurance. Petitioner argues that, based only upon the assets transferred to it by Contract Cleaners, Inc., it could not have stayed in business for more than a week without infusion of additional operating capital. In support of this claim, it points to the fact that it was necessary to infuse $250,000 of new capital into the company in order to meet forthcoming payroll for work in progress.

We do not believe that the evidence upon which petitioner relies tends to defeat the agency's findings of business continuity. The retention of highly liquid assets such as cash, accounts receivable and prepaid insurance by the transferor of a business will undoubtedly be reflected in a corresponding reduction of the purchase price payable by the transferee. In the determination of business continuity under sections 96.7(3)(b) and 96.19(5)(b), there is no significant difference between a situation where liquid assets are transferred and a higher purchase price paid, or, as was done in this case, a lower purchase price is paid, the transferor retains the liquid assets, and the transferee subsequently injects a corresponding amount of cash into the business. Petitioner's arguments can succeed only if we exalt form over substance. The agency's findings of business continuity are

supported by substantial evidence and cannot be disturbed. The decision of the district court is affirmed.

AFFIRMED.