Belen B. FERNANDEZ, M.D.,
Appellant,

v.

IOWA DEPARTMENT OF HUMAN
SERVICES, Appellee.

No. 84–1841.

Supreme Court of Iowa.

Oct. 16, 1985.

Ronald L. Sutphin, of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Stephen C. Robinson, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN and SCHULTZ, JJ.

SCHULTZ, Justice.

Belen B. Fernandez, M.D., a licensed psychiatrist, appeals from a district court decision affirming an agency ruling. The Iowa Department of Social Services[1] (department) held that Dr. Fernandez had violated agency rules that were established to administer the Medical Assistance Act (medicaid). Iowa Code chapter 249A (1981). The department found that Dr. Fernandez improperly signed claims and received payment for medicaid services from February 1 through September 21, 1982, in the amount of $87,727.58. These claims were based primarily on services provided by two psychologists, Barbara Cavallin and Susan McNeil, employees of Cavallin & Associates, P.C. As a sanction, the department suspended and withheld medicaid payments to Dr. Fernandez until the department was able to offset the amount of the overpayment.

In 1971 Dr. Fernandez established a psychiatric practice in Des Moines. For several years she has practiced at the Medical Clinic of Des Moines, P.C., located at 303 University Avenue. That location remained her principal practice even after she entered into an agreement with Barbara Cavallin.

Cavallin & Associates, P.C. (corporation), owned by Barbara Cavallin since July 1982, is located at 1402 Woodland Avenue in Des Moines. Prior to July 1982 the corporation was known as Hector W. Cavallin, M.D., P.C. Dr. Hector Cavallin, a psychiatrist, and Barbara Cavallin, Ph.D., a clinical psychologist, have been married since 1962 and both were employed by Hector W. Cavallin, M.D., P.C. Dr. Hector Cavallin was the medical director there until his license to practice as a physician in Iowa was revoked on October 13, 1981. At that time Dr. Hector Cavallin's patients were informed that continued service would be available from Barbara J. Cavallin, Ph.D., and Susan McNeil, Ed.D. Additionally, the notice indicated a psychiatrist would be hired on a temporary basis to assume care of patients, provide for medication needs, and complete insurance forms so there would be no interruption of insurance coverage to the patients.

In December 1981, Barbara Cavallin asked the corporation's office manager, Sherry Chidester, to investigate if there was any way the office could continue to provide services and receive payments through insurance coverage such as medicaid. Chidester made contact with the department and Blue Cross/Blue Shield, which issues provider numbers for the medicare program, concerning eligibility for medicaid payments. After her investigation Chidester informed Barbara Cavallin that medicaid only paid individuals who had provider numbers and that these numbers were issued only to physicians, not psychologists.

Thereafter Barbara Cavallin began looking for a physician for the corporation. Subsequently, on January 29, 1982, an agreement was entered into between Barbara Cavallin and Dr. Fernandez wherein Dr. Fernandez agreed to serve as medical

<hr />

**1.** On July 1, 1983, the department was renamed the Iowa Department of Human Services.

director for Barbara Cavallin commencing on February 1, 1982. The agreement provided that Dr. Fernandez, as medical director, was to be paid $90 for each hour of supervision and was to receive an additional $180 per week for being available 24 hours per day, unless Dr. Fernandez was out of town in which case she would provide a backup physician. Dr. Fernandez was to provide a minimum of two hours of direct supervision per week in the corporation's office.

Although Dr. Fernandez had a provider number with the department, the corporation's office manager secured a new medicaid provider number for Dr. Fernandez at the 1402 Woodland Avenue location. Medicaid claims were then submitted to the department and paid to Dr. Fernandez, who endorsed the payments over to the corporation. This arrangement continued until Dr. Hector Cavallin regained his license and returned to the Woodland office in December of 1982.

On November 23, 1982, the department began an audit review of the claims submitted by the corporation. On February 22, 1983, the department notified Dr. Fernandez that medicaid payments to her were being suspended or withheld as sanctions for violating administrative rules established to implement the medicaid program. The department maintained that a medicaid rule, 770 Iowa Administrative Code 78.1(13) (1979),[2] was violated as follows: (1) an employment relationship "did not exist in that the auxiliary personnel were not in the employ of the physician,"; and (2) Dr. Fernandez did not provide direct personal supervision of auxiliary personnel "in that the physician was not on the premises when the services of the auxiliary personnel were provided." Additional allegations were made that Dr. Fernandez failed to maintain clinical and fiscal records and presented or caused to be presented payment of false claims for services.

On March 23, 1983, Dr. Fernandez appealed the suspension and a contested case hearing was held before a hearing officer. A proposed decision rendered by the hearing officer sustained the department's allegations against Dr. Fernandez. The hearing officer determined that the department was entitled to the amount demanded and that suspension of payments was an appropriate sanction. Additionally, the hearing officer found that Dr. Fernandez and the two psychologists failed to maintain adequate clinical records for charges made to the medicaid program. The agency adopted the hearing officer's proposed decision as its final decision and on judicial review the district court affirmed the agency ruling.

On appeal Dr. Fernandez (appellant) asserts: (1) an employment relationship did exist and appellant did exercise direct personal supervision; (2) rule 78.1(13) was void for unreasonableness; (3) clinical records were adequately maintained; (4) the department should have been estopped from asserting its claims; and (5) the department had no authority to impose the sanctions, and if proper the sanctions were excessive.

I. *Employment relationship and direct supervision.* The issue in this division is whether appellant complied with rule 78.1(13) which provides:

> Payment will be approved for services rendered by a nurse, psychologist, social worker, or occupational or physical therapist, when there is direct personal supervision by the physician and an actual employment relationship exists between the psychologist or social worker and the physician. Direct personal supervision means that the physician must be on the premises and available to provide immediate and personal assistance and direction.

770 Iowa Admin. Code 78.1(13) (1979). Appellant concedes that the rule requires both direct personal supervision by the physician

---

**2.** The present administrative rules which proved for medicaid benefits are located at 498 Iowa Admin. Code chs. 75–85 (1984). Effective July

1, 1983, these rule numbers remained the same but were relocated from division 770 to 498 because of the department's name change.

and an actual employment relationship, but claims that she has met both requisites. We hold that appellant has not met either requirement.

Prior to discussing these requirements we examine the background of rule 78.-1(13). Medicaid is a federal and state cooperative program which provides medical assistance to limited categories of people, such as individuals who receive aid to dependent children or supplemental security income. *See* 42 U.S.C. § 1396d(a) (1983); Iowa Code ch. 249A (1981). The commissioner of the department is responsible for administering the medical assistance in accordance with federal law and to "make rules, establish policies and prescribe procedures to implement" chapter 249A. Iowa Code § 249A.4 (1981). Medicaid payments are made for medically necessary services provided by a doctor of medicine or osteopathy subject to certain limitations and exceptions. *See* 770 Iowa Admin. Code 78.1 (1979). Although psychologists are eligible to practice their profession independent of a physician, medicaid payments are paid only when the psychologist is directly supervised by and within an actual employment relationship with a physician. *Id.* at 78.1(13).

A. *Employment.* The issue presented here is whether the two psychologists had an employment relationship with the appellant in 1982. Appellant urges that the rule requiring an employment relationship does not imply anything more than the physician exercising control over the psychologists. Appellant urges that under her employment contract she had the right to supervise the psychologists and could terminate the contract, at any time, if her directions were not obeyed. She maintains, therefore, that an employment relationship had existed within the meaning of rule 78.1(13).

■ Our review of the agency decision is at law, and not de novo. *Messina v. Iowa Department of Job Service,* 341 N.W.2d 52, 59 (Iowa 1983); *Iowa Health Systems Agency, Inc. v. Wade,* 327 N.W.2d 732, 733 (1982). The agency's decision must be supported "by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8)(f); *Richards v. Iowa Department of Revenue,* 360 N.W.2d 830, 831 (Iowa 1985). Evidence is substantial to support an agency's decision if a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference. *Mercy Health Center v. State Health Facilities Council,* 360 N.W.2d 808, 811–12 (Iowa 1985).

■ Generally, we give administrative tribunals a reasonable range of informed discretion in the interpretation and application of their own administrative rules. *Meads v. Iowa Department of Social Services,* 366 N.W.2d 555, 559 (Iowa 1985). For purposes of our review of the agency decision in this case, we will refer to the hearing officer's findings of fact and conclusions of law as being the agency decision because, on appeal, the agency adopted the hearing officer's proposed decision as its final decision.

■ We conclude that the hearing officer's interpretation that rule 78.1(13) requires an "employment relationship" with the physician cast in the role of the employer and the psychologist as the employee is not inconsistent with chapter 249A. Requiring the psychologist be employed by the physician is an assurance that medical assistance will be provided. An "employer" is "[o]ne who employs the services of others; one for whom employees work and who pays their wages or salaries." *Black's Law Dictionary* 471 (rev. 5th ed. 1979). An "employee" is "[a] person in the service of another under any contract of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed." *Id.* Additionally, a "servant" is defined as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

Restatement (Second) of Agency § 220(1) (1958).

■ The agreement between appellant and Barbara Cavallin did not cast appellant in the role of the employer. Rather, as the second party to the agreement, appellant merely agreed to serve as a medical director for Barbara Cavallin. Generally employers have the primary right to determine who shall serve them. This case is to the contrary as appellant was under contract to perform a service, she did not choose her employees, she paid none of the employees wages, and the work she performed was for the benefit of the psychologists. The few patients appellant treated were patients of the Cavallins. The fact that the appellant had limited control over some of the work performed by the psychologists does not, by itself, create an employment relationship. We conclude there was substantial evidence in the record to support the hearing officer's determination that an employment relationship did not exist.

B. *Personal supervision.* The hearing officer also found that the appellant "did not provide direct personal supervision of the psychologists and the social worker. The appellant was not on the premises and was not available to provide immediate and personal assistance and direction." Appellant asserts that rule 78.1(13) does not contain a time requirement for being on the premises, but rather merely requires the physician provide necessary supervision of the psychologists.

■ The plain language of rule 78.1(13) requires that the physician "must be on the premises and available to provide immediate and personal assistance and direction." 770 Iowa Admin. Code 78.1(13) (1979). However, a department release noted that "[d]irect personal and continuous supervision does not require that the psychologist or social worker be in the presence of the physician but the physician must be available to provide personal assistance and direction." Iowa Department of Social Services, Coverage and Limitations of Physician Services 21–22 (December 1, 1980).

We conclude as did the hearing officer that this does not mean, as Fernandez contends, that the requirement of the presence of a physician is entirely eliminated.

■ The hearing officer made numerous findings of fact regarding whether appellant provided direct personal supervision. The hearing officer determined that from February through November of 1982, the total possible minimum number of supervision hours appellant was to provide was 86 hours (43 weeks × 2 hours). Of these 86 hours, appellant provided and billed the corporation for approximately 51 hours of supervision on the premises of 1404 Woodland Avenue. The supervision never exceeded two hours during any one week. Of the total 43 weeks, there were 12 weeks with no supervision and some weeks only one of the psychologists was supervised. Appellant personally treated and billed approximately 3 patients at the corporation's office during the 43-week period. During the time of the appellant-Cavallin agreement 137 medicaid patients were treated by the corporation, with total medicaid claims paid out of approximately $87,727.58. We find there is substantial evidence in the record to support the hearing officer's conclusion that appellant did not adequately provide direct personal supervision of the psychologists.

II. *Rule void for unreasonableness.* Appellant next contends rule 78.1(13), which defines "direct personal supervision" as requiring "that the physician must be on the premises and available to provide immediate and personal assistance. and direction," is void because it is unreasonable. 770 Iowa Admin. Code 78.1(13) (1979). She contends that because psychiatrists cannot always control when they are going to the hospital this rule makes scheduling difficult. Appellant also urges that it is common procedure for a psychologist to conduct the intake of patients for review by the psychiatrist and in many situations it is never necessary for the psychiatrist to see the patient. She maintains that the rule 78.1(13) unreasonably dictates how a psychiatrist's practice should be conducted.

■ Administrative rules have the force of law and are presumed valid. *Richards,* 360 N.W.2d at 833. These rules must be reasonable and consistent with legislative enactments. *Iowa Department of Revenue v. Iowa Merit Employment Commission,* 243 N.W.2d 610, 616 (Iowa 1976).

■ Medicaid benefits are primarily for services rendered by a physician. The purpose of rule 78.1(13) is to reduce the cost of physician services by permitting, when possible, the services be provided by supporting staff, including a psychologist, at a lower rate when the employing doctor is also available to give supervision. It is not unreasonable to require medicaid patients be scheduled for appointments when the psychiatrist is in the office and available for supervision and direction of the psychologist. The purpose of rule 78.1(13) is not to provide payment for the services of psychologists, but payment for such services only when they are performed by a psychologist employed by a physician who has direct supervision of the treatment. We agree with the hearing officer's conclusion that rule 78.1(13) is not unreasonable.

III. *Adequate clinical records.* The hearing officer found that the appellant and the two psychologists did not properly maintain clinical records as required by rule 79.3. *See* 770 Iowa Admin. Code 79.3 (1979). Because we have already determined in division I that appellant has violated agency rules, resolution of this issue will only effect the sanctions to be imposed. Rule 79.3 requires clinical and fiscal records be maintained as follows:

Providers of service shall maintain clinical and fiscal records in support of services for which a charge is made to the program and shall make such records available to duly authorized representatives of the department on request. The fiscal records shall support each item of service for which a charge is made to the program and the clinical records shall specify the procedure or procedures performed, the dates of the service, the medications or other supplies or services prescribed or provided to the recipient together with information concerning the progress of treatment. Such clinical and fiscal records shall be retained for a minimum of five years. After five years the records may be destroyed.

770 Iowa Admin. Code 79.3 (1979).

Appellant maintains that if the department auditors would have considered the various records of Barbara Cavallin and Susan McNeil—including session notes, progress notes, appointment books and copies of claims for medicaid benefits—most of the record-keeping requirements, if not all, would have been satisfied. Appellant urges that the rule does not require a one-source clinical record.

■ The hearing officer's conclusions of law are contrary to appellant's assertions, however. The hearing officer stated:

Even if all the records maintained by the psychologists are viewed together, the records are insufficient to meet the requirements.... In reviewing the evidence it is extremely difficult or impossible to verify the Medicaid claims. The appointment books do not always match the dates of service listed on claims, as shown by the findings of the auditors. The psychologists themselves could not determine the date when psychological testing occurred on one case. The quarterly reports do not describe individual dates of service and the types of services provided. The session notes were not provided to the auditors. The session notes also were destroyed which violates the retention requirements of five years. The peg board sheets were not provided to the auditors. The peg board sheets, however, contain the same information as the ledger cards which were used to complete the Medicaid claims. The code number for individual psychotherapy on ledger cards is hardly sufficient to describe the type of procedure performed or service provided. What type of individual psychotherapy was the psychologist using on that date and how was the patient responding? Was the psychotherapy procedure talk, play, homework or task?

Additionally, the hearing officer's findings of fact disclosed that many of the patients' records contained only face sheets, dates were missing, handwritten notes were destroyed, and in some instances more hours were billed than was appropriate. Our review of the record indicates that the hearing officer's findings were supported by substantial evidence when the record is viewed as a whole.

IV. *Estoppel.* Appellant next claims the department should be estopped from asserting the present rule violations due to inadequate or erroneous information it furnished the corporation's office manager. Appellant asserts that the officer manager conversed with and corresponded to department personnel in an attempt to obtain a provider number for appellant to receive medicaid payments. Additionally, the manager had numerous conversations concerning this matter with employees of Blue Cross/Blue Shield, the administrator of provider enrollment for medicare. It was only after a thorough investigation, appellant claims, that the office manager determined that the physician did not always have to be on the premises and had to only direct and supervise the psychologists. Therefore, appellant asserts the doctrine of equitable estoppel should be applied to prevent the department from now taking the position that the relationship between the appellant and the two psychologists violated rule 78.1(13).

The hearing officer determined that the doctrine of equitable estoppel cannot be asserted against the state because the department was not invoking the equity jurisdiction of our courts in this case. The hearing officer determined further that even if the doctrine could be asserted against the department, the evidence was insufficient to support its application. In our holding we do not determine whether equitable estoppel is available as an affirmative defense in this instance, but merely hold that appellant has not met the burden of proof necessary to warrant applying the doctrine of equitable estoppel.

Equitable estoppel is based on the concept that one who has made certain representations should not thereafter be permitted to change his or her position to the prejudice of one who has relied thereon. *In re Estate of McAllister*, 214 N.W.2d 142, 146 (Iowa 1974); *Holden v. Construction Machinery Co.*, 202 N.W.2d 348, 355–56 (Iowa 1972). It may be utilized when otherwise injustice would result. *McAllister*, 214 N.W.2d at 146. The elements of equitable estoppel are well established: (1) a false representation or concealment of material facts; (2) lack of knowledge of the true facts on the part of the actor; (3) intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury. *Khabbaz v. Swartz*, 319 N.W.2d 279, 286 (Iowa 1982); *Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978). Equitable estoppel may not be established if any one of these elements is lacking. *Khabbaz*, 319 N.W.2d at 286.

Appellant simply did not prove the first element of equitable estoppel in this case. She has presented no evidence to show that the department or its employees made false representations or concealed material facts. A review of the hearing officer's findings of fact reveals the department made its decision to give a provider number based on the information the corporation's office manager provided it and Blue Cross/Blue Shield. The hearing officer determined neither the department nor Blue Cross/Blue Shield was furnished a copy of the appellant-Barbara Cavallin contract in applying for the provider numbers. The officer manager sent letters to the department and Blue Cross/Blue Shield stating appellant would be "supervising and directing" the treatment process at the corporation's offices. The manager testified she informed the department and Blue Cross/Blue Shield that appellant was opening a "satellite office" at the Woodland location. Further, the hearing officer determined the agency did not know that the appellant would be on the premises of the corporation's office only two hours per week and was unaware of other aspects of

the relationship. The record supports these findings. We conclude appellant cannot assert the doctrine of equitable estoppel in this case. Appellant has failed to show the department concealed material facts or made false representations based on the information it was provided.

V. *Sanctions.* Initially, appellant attacks the sanctions imposed by the department. In the notice of sanction it sent to appellant, the department stated its conclusions concerning the rule violations and set out the sanctions in pertinent part as follows:

> The known value of these violations is $87,727.58. ... These claims were made in violation of the rules of the Department of Social Services. You are notified that further action of the Department of Social Services is to suspend and withhold payments to you under provider numbers ... pursuant to 770 IAC 79.-2(3)(d) and 770 IAC 79.2(8). Demand is made for the prompt payment of the $87,727.58.

Appellant urges that a collection of previously paid claims cannot be imposed as a sanction. We disagree.

As indicated earlier, the department's commissioner has authority to make rules, establish policies, and prescribe procedures for payment of medicaid services, including the power to provide "for medical direction and supervision as needed." Iowa Code § 249A.4(7) (1981). The department has adopted rules regarding the imposition of sanctions. By rule, the department "reserves the right to impose sanctions against any practitioner or provider of care who has violated the requirements for participation in the medical assistance program." 770 Iowa Admin. Code 79.2 (1982). One of the sanctions that may be imposed on providers is the "suspension or withholding of payments to provider." 770 Iowa Admin. Code 79.2(3)(d) (1981).

Appellant challenges the authority of the department to collect from appellant previously paid claims as a sanction. She urges that Iowa Code section 249A.5 (1981) merely allowed the department to recover incorrectly paid benefits only from the medical care "recipient" because there contained no language explicitly giving the agency authority to recover such payments from the provider. She adds that in 1983 this section was amended to specifically permit recovery "from the provider, or from the recipient" for assistance incorrectly paid. Act of May 26, 1983, ch. 153, 1983 Iowa Acts 333 (codified in Iowa Code § 249A.5 (Supp.1983)). Therefore, appellant concludes that the department had no authority to recover from the appellant-provider in 1982 because the department could not do what the legislature expressly refused to do prior to 1983. We do not agree.

 We conclude that the hearing officer's interpretation that the administrative rules gave the department authority to recover from the appellant any incorrectly paid assistance by suspending or withholding medicaid payments is neither plainly erroneous nor inconsistent with chapter 249A. We agree that section 249A.5 (1981) should not be interpreted to prohibit the department from recovering incorrectly paid medicaid payments to the appellant-provider. More importantly, as a department of the state government it had a duty and implied authority to recoup from the provider payments incorrectly made when the payments were made because of rule violations by the provider. *See, e.g., Jacquet v. Westerfield,* 569 F.2d 1339, 1342 (5th Cir.1978) (court rejected plaintiff's argument that congressional silence should be read as prohibiting recoupment in the AFDC program); *Redding v. Burlington County Welfare Board,* 65 N.J. 439, 445, 323 A.2d 477, 480 (1974) (while there is no statutory authority for recovery, such power must be implied in the delegation of authority to administer the program and public interest requires that the welfare board have the power to recover the benefits illegally paid). The court in *Jacquet* stated, "[n]o express statutory authorization is required to permit the government to recoup monies wrongfully paid." 569 F.2d at 1342. We hold the hearing officer's decision that the department could

withhold future payments from the provider to recoup the $87,727.58 was a correct conclusion of law.

Finally, appellant urges that the sanctions were excessive. We find no merit in this argument. The department had authority to completely bar the appellant from ever participating in the medicaid program. The sanctions imposed, however, merely allow the department to recoup the illegal payments out of future medicaid payments to the appellant. We find there was substantial evidence in the record to support that the sanctions imposed by the department were not excessive.

In summary, we hold that the district court correctly affirmed the agency ruling.

AFFIRMED.