Dennis D. RAY, Petitioner-Appellant,

v.

IOWA DEPARTMENT OF JOB SERVICE and North Star Steel Company, Respondents-Appellees.

No. 85–1297.

Court of Appeals of Iowa.

Oct. 22, 1986.

Wendy E. Geertz of Mears, Zimmerman & Mears, Iowa City, for petitioner-appellant.

Walter F. Maley, Blair H. Dewey, and Joseph L. Bervid of Iowa Dept. of Job Service, for respondent-appellee Iowa Dept. of Job Service.

Mark Zaiger of Shuttleworth & Ingersoll, Cedar Rapids, for respondent-appellee North Star Steel Co.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

Petitioner appeals from the district court's affirmance of the Job Service decision which denied his unemployment benefits on the basis of misconduct. Petitioner asserts that there was insufficient evidence in the record to support the Job Service finding that he was discharged for misconduct. We affirm.

The petitioner, Dennis Ray, began work for respondent-employer North Star Steel Company in April 1979. On December 28, 1981, due to his past disciplinary record, Ray signed a "last chance" agreement with his employer providing that Ray was required to maintain a discipline-free record for one year. Ray was to avoid any incident, including absenteeism, which could result in a disciplinary action and lead to immediate termination.

On October 31, 1982, petitioner notified his employer by telephone that he would be absent from work because he was moving. On November 1, 1982, Ray received a warning of absences occurring on June 20, 1982, September 11, 1982, and for the October 31 absence. Ray was suspended for five days and was subsequently dismissed on November 5. The October 31 absence was the one that triggered the final warning.

Ray applied for unemployment benefits on November 8, 1982. North Star Steel

protested the payment of benefits. Ray was subsequently denied unemployment insurance by a Job Service claims deputy. On January 10, 1983, an evidentiary hearing was held. At that hearing, the hearing officer determined that Ray's claim was untimely. On January 24, 1984, the Iowa Supreme Court remanded the case to the district court, which in turn remanded to Job Service for notice, hearing, and a new decision.

A new hearing was held on July 13, 1984. At the hearing, Ray testified that during the three months prior to his dismissal he had been suffering from severe anxiety due to an impending divorce from his wife. Ray's physician had prescribed the medication, Lorazepam, for Ray's anxiety. Ray testified that on October 31 he was still taking medication for his anxiety. Earlier that day, Ray had been moving to a new residence but had finished in plenty of time to make it to his 4:00 p.m. shift. Ray then decided to eat lunch with a friend, at which time he consumed a half pitcher of beer. Ray testified that as a result of this combination of medication and alcohol, he experienced dizziness and drowsiness. Ray then introduced records showing that he had made five telephone conversations in an attempt to inform his supervisor of his impending absence. Ray testified that one of the phone calls was made to his shop supervisor, Mike Berry; however, Mr. Berry was not home. Ray next called Larry Turner, a temporary foreman. When Ray explained his medication problem to Turner, Turner told Ray that he had no authority to excuse absences and transferred the call to the security guard. The guard took the message, but stated that he had no authority to excuse absences. Ray testified that he then told the security guard, "Well, just put down I'm moving." Ray testified that because he could not reach the appropriate supervisor, he saw no reason to explain his condition to the security guard. Ray testified that the next day he explained his situation to Mike Berry and that Berry then took him to Ray Brisker, who gave Ray a five-day suspension. Ray then testified that after his five-day suspension he returned to work and explained his medication problem to Brisker.

The employer testified that the security guard contacted by Ray is only a message taker and that the guard had no authority to excuse absences. The employer additionally denied that Ray had ever given an explanation of his absence to Brisker. The employer also introduced evidence showing that during Ray's 43 months of employment he received nineteen disciplinary slips, eleven of which were for absenteeism, three for failing to follow a supervisor's orders, four for poor work performance, and one for damaging company property.

The Job Service hearing officer determined that Ray was discharged for misconduct and was not entitled to benefits. The Job Service Appeal Board affirmed the hearing officer's decision, but split 2–1 in its decision. The dissenting member found that Ray's absence was medically related and that no misconduct had been established. The district court affirmed the conclusion of the appeal board.

 In cases arising out of the Iowa Administrative Procedures Act, our scope of review is limited to the correction of errors of law and not de novo. Iowa Code § 17A.20 (1985). In order to uphold the decision of the Job Service Appeal Board, such decision must be supported by substantial evidence in the record before the agency when the record is reviewed as a whole. *Fernandez v. Iowa Dep't of Human Services*, 375 N.W.2d 701, 705 (Iowa 1985). Evidence is substantial to support an agency's decision if a reasonable person would find it adequate to reach the given conclusion. *Meads v. Iowa Dep't of Social Services*, 366 N.W.2d 555, 558 (Iowa 1985). Though two inconsistent conclusions may be drawn from the record, such a possibility does not prevent the agency's finding from being supported by substantial evidence. *Contract Services, Ltd. v. Iowa Dep't of Job Service*, 372 N.W.2d 212, 215–16 (Iowa 1985). In order to make that determination, we apply the standards of

Iowa Code section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as the district. *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979).

■ Under Iowa Code section 96.5(2)(a) (1985), an individual may be disqualified for unemployment benefits if that individual is discharged for misconduct. The administrative rule defining misconduct reflects legislative intent. *Huntoon v. Iowa Dep't of Job Service*, 275 N.W.2d 445, 448 (Iowa 1979), *cert. denied* 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979). That rule, 370 Iowa Administrative Code section 4.32(1)(a), provides:

> *Misconduct* is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to except of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or other negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Thus, under this definition misconduct is limited to "conduct evincing such willful or wanton disregard of standards of behavior which the employer has the right to expect of employees ... or ... intentional and substantial disregard of the employer's interests...." 370 Iowa Administrative Code section 4.32(8) (1986), also provides that "[w]hile past acts and warnings can be used to determine the magnitude of a current act of misconduct, a discharge for misconduct cannot be based on such act or acts. The termination of employment must be based on a current act." In interpreting section 4.32(1)(a), we may look at the manner in which such incident took place and the surrounding circumstances as a whole in determining whether Ray's actions could be construed as misconduct. *See Warrell v. Iowa Dept. of Job Service*, 356 N.W.2d 587, 590 (Iowa Ct.App.1984) (where court held that while vulgar language alone was sufficient to find misconduct, it was the entire record which was determinative of the issue of misconduct). The employer, however, has the burden of proof in demonstrating misconduct on the part of Ray. *Harlan v. Iowa Dept. of Job Service*, 350 N.W.2d 192, 194 (Iowa 1984); *Cosper v. Iowa Dept. of Job Service*, 321 N.W.2d 6, 11 (Iowa 1982).

■ We believe, upon examining the record as a whole, that there is substantial evidence in the record to lead a reasonable person to conclude that Ray's absence on October 31, 1982, was misconduct. During Ray's approximately two and one-half years of employment, Ray received *nineteen* disciplinary slips, eleven of which were attributed to absenteeism. On account of such a poor record, Ray entered into a "last chance agreement," which put Ray on probation for one year, provided that he maintain a discipline-free record. Despite this agreement, the import of which Ray was fully cognizant, Ray proceeded to acquire three more unexcused absences on his record. The employer, however, wishing to go the extra mile, again warned Ray that additional unexcused absences could lead to termination.

On the date in question, Ray, having already completed his moving, decided to go out to lunch and have some beer and eat lunch before work. At this point Ray allegedly became ill because of the effects of the alcohol with the medicine he had been taking. Ray then decided to call his super-

visor to explain that he was ill. Because his temporary foreman told him he could not excuse an absence, Ray talked to the security guard and told him he wasn't coming in because he was moving, which the security guard wrote on an employee absenteeism report. When questioned at the Job Service hearing as to why he felt it necessary to explain his illness to his temporary foreman but only several minutes later told the security guard that his absence was due to moving, Ray stated that "my mind wasn't where it was supposed to be." The next day Ray was given a five-day suspension. Ray then had five days within which to explain his absence. Ray testified that he did explain to his foreman that he was absent because he was ill. The employers, however, testified that at their final meeting no explanation was ever given. Ray Brisker testified that Ray stated something to the effect of "It's no use," or, "I have nothing to say." There was, however, evidence tending to show that the employer was aware of Ray's anxiety attacks and his taking of medication for such illness. Nevertheless, the employer, concluding that Ray had provided insufficient reasons to explain his absence, terminated Ray's employment.

The hearing officer was in the unique position of being able to judge the credibility of the witnesses firsthand. As the factfinder, the hearing officer was free to believe or disbelieve the veracity of the witnesses as in his judgment the evidence is entitled to receive. *Hurtado v. Iowa Dept. of Job Service*, 393 N.W.2d 309, 311 (Iowa 1986) (wherein the court held that Job Service need not accept as a verity petitioner's testimony concerning why he fell asleep, and that furthermore, even if petitioner's reasons were believed, Job Service still could have found petitioner's actions constituted misconduct). Though the employer did not produce any of the employees Ray allegedly informed about his illness to refute Ray's testimony, such facts were clearly presented to the hearing officer when making his determination. Based upon the *entirety* of the record, the hearing officer concluded, and the appeal board

and district court agreed, that Ray's conduct fell within the statutory definition of misconduct.

Based upon the record as a whole, we believe that a reasonable person could reach a conclusion that Ray's actions, magnified by his numerous violations of his "last chance agreement," constituted misconduct. This case is not the same as the situation presented in *Budding v. Iowa Dep't of Job Service*, 337 N.W.2d 219 (Iowa Ct.App.1983), wherein the employee had been given three previous warnings before his termination, but was not on probation or suspension. This is a case of probationary conduct. Ray had been given nineteen warnings and disciplinary slips in two and one-half years. To say that Ray's conduct amounted to mere inefficiency or good faith error in judgment would ignore the fact that Ray had been on probation and had been down the same road before. Ray was fully cognizant of the implications of the last chance agreement. Ray's credibility as a trustworthy employee was challenged time and again and the October 31 incident was "the straw that broke the camel's back." Ray had long since forfeited his rights as a nonprobationary employee. We therefore hold that the district court was correct in affirming the Job Service decision denying Ray's unemployment benefits.

AFFIRMED.

HAYDEN, J., concurs.

SCHLEGEL, J., dissents.

SCHLEGEL, Judge (dissenting).

There are two reasons I must dissent from the majority opinion. First, the majority's analysis implies that the employee has the burden of proof in demonstrating that misconduct did not occur. This is wrong.

The Iowa Administrative Code states: Allegations of misconduct or dishonesty without additional evidence shall not be sufficient to result in disqualification. If the employer is unwilling to furnish

available evidence to corroborate the allegation misconduct cannot be established. 370 Iowa Admin.Code 4.32(4) (1986). We have emphatically interpreted this section of the administrative code as placing the burden of proving allegations of misconduct upon the employer. *Harlan v. Iowa Department of Job Service,* 350 N.W.2d 192, 194 (Iowa 1984); *Cosper v. Iowa Department of Job Service,* 321 N.W.2d 6, 11 (Iowa 1982); *Floyd v. Iowa Department of Job Service,* 338 N.W.2d 536, 538 (Iowa Ct.App.1983). We look at the agency's decision as a whole to determine if the burden of proof was misallocated. *Harlan,* 350 N.W.2d at 195.

The issue presented to us is not whether Ray's overall poor employment record prior to the October 31 absence was sufficient reason to find misconduct on his part. The Iowa Administrative Code provides:

> While past acts and warnings can be used to determine the magnitude of a current act of misconduct, a discharge for misconduct cannot be based on such act or acts. The termination of employment must be based on a current act.

370 Iowa Admin.Code 4.32(8) (1986). The employer claimed that the October 31 absence was the current act of misconduct that triggered the discharge. The hearing officer stated, "The event that triggered his discharge was his absence of October 31, 1982, which was an unexcused absence because of personal business (moving), which is misconduct within the meaning of Section 96.5–2–1 of the Iowa Code as above defined." The district court stated, "It appears from this record, and the petitioner admits, that he told the company representative that his reason for being off work on October 31, 1982 was personal; he was moving. This would amount to an unexcused absence." Therefore, the issue presented to us is whether the respondent carried its burden of proving that Ray's absence on October 31 was misconduct as defined by Job Service rules.

I do not believe there is substantial evidence in the record as a whole that respondent carried its burden of proof in showing that the October 31 absence was misconduct. Iowa has adopted the inference that:

> Where it is apparent that a party has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, it may be presumed that if the more satisfactory evidence had been given it would have laid open deficiencies in, and objections to, his case which the more obscure and uncertain evidence did not disclose.

31A C.J.S. Evidence § 156(1) (1964); *Crosser v. Iowa Department of Public Safety,* 240 N.W.2d 682, 685 (Iowa 1976); *Quint-Cities Petroleum Co. v. Maas,* 259 Iowa 122, 127, 143 N.W.2d 345, 348 (1966). Although this inference is most useful in weighing the evidence, we also believe that such an inference assists our examination of the substantiality of the evidence. The bare fact of the security guard having written "moving" on the paper is made qualitatively less effective by the failure of respondents to produce relevant witnesses which would have provided more satisfactory evidence. This same inference is ineffective against Ray since where the party upon whom the burden of proof vests fails to make out a prima facie case, no presumption arises from the failure of the other party to present evidence peculiarly within his knowledge. 31A C.J.S. § 156 (1964); *see, e.g., United States v. Cherkasky,* 259 F.2d 89 (3rd Cir.1958). Respondent does not dispute the greater part of Ray's testimony. Respondent did not produce the security guard to testify as to his evaluation of Ray's manner or as to any other information that Ray might have given the guard. Respondent did not produce Mike Berry to challenge Ray's testimony that Ray had informed Berry of the previous day's illness. Respondent did not produce Larry Turner to refute Ray's testimony that Ray informed Turner of the illness. Respondent claims that the reason Turner was not called was because Ray did not testify at the initial hearing on January 10, 1983, that he had spoken to Turner. Respondent's brief states:

There seems no reason for the employer to call Turner as a witness absent any information that his knowledge would be in issue. If that were the case, perhaps an employer would be required to call an employee in order to anticipate the necessity to prove that a particular thing did not occur.

This argument is disingenuous. Before Ray's shift began, Turner was the temporary foreman in charge to whom Ray could have been expected to report. His testimony that Ray did not call him or tell him that Ray was moving would have been much more satisfactory evidence than the guard's absentee report. By not calling those witnesses employed by the company and presumably having some loyalty to the company, respondent chose to rely solely on the security guard's notation. I think this single notation, by itself, and in the context of the evidence presented by Ray, does not constitute substantial evidence of misconduct on Ray's part.

The second reason I must dissent is that once again the "last straw" doctrine is utilized as a technique of deferring to the employer's determination of misconduct. The majority says the October 31 incident was "the straw that broke the camel's back," apparently regardless of whether the last act was misconduct itself. I believe that even though a current act may constitute unsatisfactory conduct for the purposes of termination, such an act must be misconduct *per se* for the disqualification of unemployment benefits. The employer is in the position of deciding when the third, fourth, fifth, etc., act is enough to provide a basis for termination. Our judicial review system must decide if that last act is misconduct in order to deny unemployment benefits. Without this "bright line" determination, the Job Service is doing nothing more than rubber stamping the employer's determination of when one of any number of acts of unsatisfactory conduct is misconduct.

For the foregoing reasons, I must dissent.