**George E. GIMBEL, Appellant,**

v.

**EMPLOYMENT APPEAL BOARD, Appellee,**

**and**

**Iowa Beef Processors, Inc., Respondent.**

**No. 91–1299.**

Court of Appeals of Iowa.

June 25, 1992.

Nancy Combs, Iowa City, for appellant.

William C. Whitten and Joe E. Smith, Des Moines, for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN, J., and McCARTNEY, Senior Judge.*

McCARTNEY, Senior Judge.

George Gimbel appeals from the decision of the district court denying him certain unemployment benefits. We reverse both such decision and the comparable decision of the Employment Appeal Board and order the board to award such benefits to Gimbel.

Gimbel was employed as a fork-lift operator by Iowa Beef Processors, Inc. (IBP) from August 28, 1987 to November 15, 1990. IBP has a rule requiring employees to call in thirty minutes before the start of the shift to report an absence. Gimbel has an asthma condition, and on November 14, 1990, he had an asthma attack. He used an inhaler without effect, and he could not find his asthma pills for some time. After he found the pills, his live-in girlfriend went to a pay phone to call in to IBP to report his absence. The couple does not have a telephone. The call was made ten or fifteen minutes before Gimbel's shift was to begin at 7:00 a.m. Gimbel himself called IBP at 8:30 a.m. when his asthma attack was under control.

Gimbel also saw his doctor on November 14, and the doctor wrote out an excuse which Gimbel gave to IBP on November 15. IBP, however, considered Gimbel's November 14, absence unexcused because he had not reported the absence by 6:30 a.m. in accordance with its rule. Gimbel had two previous absences which IBP considered unexcused, and on September 29, 1990, IBP had given him a written warning that if he had three more unexcused "tardies" or one more unexcused absence, he would be terminated. Based on this warning, IBP fired Gimbel on November 15, 1990.

Gimbel then sought unemployment benefits. The job service representative found no reason to disqualify Gimbel from receiving benefits. IBP appealed the decision to an administrative law judge (ALJ), who found Gimbel had been discharged for misconduct and was thus disqualified from receiving benefits. The ALJ found:

> The claimant could certainly have obtained a telephone so that he or his girl friend did not have to go to a pay phone to make calls. He knew of his asthma condition and knew that he might have an attack at any time and would have to notify the employer according to the employer's rules. Knowing this, and even though he had been warned in writing following his tardiness on September 29 that one more unexcused absence would result in his discharge, he still did not have a telephone on November 14 when he had an asthma attack requiring that he notify the employer.

The ALJ concluded Gimbel's conduct was a knowing and willful disregard of the employer's best interests. The Employment Appeal Board affirmed the ALJ, adopting the ALJ decision as its final agency action.

Gimbel filed a petition for judicial review. The district court found there was substantial evidence in the record to support the agency decision and affirmed the board. Gimbel now appeals.

■ The scope of review in cases arising out of the Iowa Administrative Procedure Act is limited to the correction of errors of law. *Gilliam v. Atlantic Bottling Co.,* 453 N.W.2d 230, 231 (Iowa App.1990). However, the scope of review encompasses a review of the entire record and is not limited to the agency's findings. *Id.*

■ On appeal from a district court judgment in a judicial review proceeding, our task is to determine whether the district court correctly applied the law. *Sioux City Brick & Tile Co. v. Employment Appeal Board,* 449 N.W.2d 634, 637 (Iowa

* Senior Judge from the 2nd Judicial District serving on this court by order of the Iowa Supreme Court.

1989). Like the district court, we apply the standard of Iowa Code section 17A.19(8) to the agency action. *Id.* In so doing, we are obligated to liberally construe chapter 96 in order to achieve the legislative objective of minimizing the burden of involuntary unemployment. *FDL Foods, Inc. v. Employment Appeal Board,* 456 N.W.2d 233, 234 (Iowa App.1990). If our conclusions match those of the district court, we affirm; if not, we reverse or modify. *Sioux City,* 449 N.W.2d at 637–638.

■ The agency's factual findings must be supported by substantial evidence in the record made before the agency when that record is viewed as a whole. *Messina v. Iowa Department of Job Service,* 341 N.W.2d 52, 59 (Iowa 1983). Evidence is substantial to support an agency's decision when a reasonable person would find it adequate to reach the given conclusion. *Ray v. Iowa Department of Job Service,* 398 N.W.2d 191, 193 (Iowa App.1986). The fact that two inconsistent conclusions can be drawn from the evidence does not mean that one of those conclusions is unsupported by substantial evidence. *Id.*

Gimbel contends his failure to report his absence by 6:30 a.m. on November 14, 1990, should not be considered misconduct. He states he did not intentionally have an asthma attack and did not intentionally fail to report his absence within the time frame required by the employer's rules. He also asserts there is not substantial evidence in the record to support a finding that he deliberately acted against his employer's interests by failing to own a telephone.

■ A claimant will be disqualified from unemployment benefits if the department finds that the individual has been discharged for misconduct. *Newman v. Iowa Department of Job Service,* 351 N.W.2d 806, 808 (Iowa App.1984). The burden to prove misconduct is on the employer. *Roberts v. Iowa Department of Job Service,* 356 N.W.2d 218, 221 (Iowa 1984). Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant the denial of benefits. *Breithaupt v. Employ-*

*ment Appeal Board,* 453 N.W.2d 532, 535 (Iowa App.1990).

■ Misconduct must be substantial in nature to support a disqualification from unemployment benefits. *Myers v. Employment Appeal Board,* 462 N.W.2d 734, 737 (Iowa App.1990). The focus is on deliberate, intentional or culpable acts by the employee. *Kelly v. Iowa Department of Job Service,* 386 N.W.2d 552, 554 (Iowa App.1986). Failure in good performance which results in inability or incapacity is not volitional and is not misconduct. *Quenot v. Iowa Department of Job Service,* 339 N.W.2d 624, 626 (Iowa App.1983).

The case of *Floyd v. Iowa Department of Job Service,* 338 N.W.2d 536 (Iowa App. 1983), is similar to the present one. There the employee was seriously ill and missed three days of work. He did not have a telephone at his home and was unable to call the employer. When he returned to work with a doctor's excuse he was discharged for unexcused absenteeism. We found the employee did not choose to be ill, and his absences did not manifest any willful or wanton disregard of his employer's interests. *Id.* at 538. We concluded the employee was unable to call in, and a failure in good performance which results from inability or incapacity is not volitional and is thus not misconduct. *Id. See also Roberts v. Iowa Department of Job Service,* 356 N.W.2d 218 (Iowa 1984) and *Quenot v. Iowa Department of Job Service,* 339 N.W.2d 624 (Iowa App.1983).

■ We cannot find substantial evidence in the present record to show Gimbel engaged in misconduct. Clearly, Gimbel did not intentionally have an asthma attack. Gimbel reported his illness as soon as he was able, and in similar fashion obtained medical verification of the asthma attack. Gimbel's failure to report his illness as required by the employer's rules was due to inability or incapacity, and was not volitional conduct. We also cannot find Gimbel intentionally acted against the interest of his employer by failing to own a telephone. While his conduct may have been serious enough to warrant discharge, we conclude it does not rise to the level of

culpable, deliberate or intentional conduct serious enough to warrant a denial of benefits.

We reverse the decision of the district court and the Employment Appeal Board. We order the board to award unemployment benefits to Gimbel. Costs of this appeal are assessed to the employer.

REVERSED AND REMANDED.