Robert H. HENDRICKS and Sandra S. Hendricks, Appellees,

v.

GREAT PLAINS SUPPLY COMPANY, Appellant,

v.

Colony Plumbing & Heating, Inc., Appellant,

and

State Farm Fire & Casualty Company, Appellee.

No. 98–689.

Supreme Court of Iowa.

April 26, 2000.

Michael McDonough of Moyer & Bergman, P.L.C., Cedar Rapids, for appellant Great Plains Supply Company.

Kevin H. Collins and Nancy J. Penner of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant Colony Plumbing & Heating, Inc.

David L. Riley of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellees Hendricks and State Farm Fire & Casualty Company.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

SNELL, Justice.

The defendants appeal and the plaintiffs cross-appeal from the entry of a judgment in an action arising from the destruction of the plaintiffs' newly constructed home. We affirm with respect to all issues except the district court's award of damages, and we remand for the entry of a judgment in accordance with this opinion.

## I. Background Facts and Proceedings

Robert and Sandra Hendricks built a new home in Marion, Iowa. Great Plains Supply Company provided materials and labor for some of the construction, including the installation of cellulose insulation in the attic. Colony Plumbing & Heating, Inc. installed the fireplace and chimney. The Hendricks moved into the home around Thanksgiving 1993.

The home was destroyed by fire on Saturday, February 12, 1994. An investigation of the fire scene revealed no radiation shield had been installed to maintain clearance around the chimney flue where it passed into the attic, and insulation which had been improperly packed in around the flue had ignited.

An employee of Great Plains, Ivan Anderson, heard about the fire on the news and visited the scene on February 13. He spoke with Mrs. Hendricks and asked her if she knew what had happened. She indicated the fireplace was being considered as a cause of the fire. Within a short time after that, Anderson reported the incident to Linda Scott, the claims person for Great Plains at its home office in Minneapolis.

The Hendricks were insured under a homeowner's policy issued by State Farm Fire & Casualty Company. They contacted their insurance agent on February 13, and he informed the claims department about the fire. State Farm retained a fire investigator, John Woodland, to investigate the cause and origin of the fire. Woodland investigated the fire scene on February 15. Dick Seifers, an adjuster with Federated Insurance Company, Colony's insurer, was also on the scene of the fire on February 15, and he took thirty-two photographs. At some point while Woodland and Seifers

were both at the fire scene, Woodland indicated to Seifers that it did not appear Colony was responsible for the fire.

Woodland sought authorization from State Farm to use the services of James Belina, an engineer, to investigate the fire. State Farm approved the request and Belina went to the scene of the fire investigation with Woodland on February 16.

State Farm paid the Hendricks for their loss. The remnants of the home were demolished approximately seven weeks after the fire to make way for the construction of a new home. On October 31, 1995, the Hendricks and State Farm filed a subrogation action against Great Plains, alleging its negligence in installing the insulation had caused the fire. Great Plains counterclaimed alleging the Hendricks had committed a breach of contract by failing to procure fire and extended coverage (builder's risk) insurance which named Great Plains as an insured.

On December 28, 1995, Great Plains filed a third-party petition for contribution against Colony Plumbing & Heating, claiming the fire was attributable to Colony's work in installing the fireplace and chimney flue. The Hendricks subsequently filed a cross-petition on April 4, 1996, against Colony asserting a similar negligence claim. Great Plains later filed a third-party cross-petition against State Farm, alleging State Farm had negligently misrepresented the existence of builder's risk insurance and that State Farm should be estopped from denying the existence of such coverage.

Following a bench trial, the district court found Great Plains and Colony were each fifty percent at fault and entered judgment against them for $378,969.21. The court dismissed all other claims. Great Plains and Colony separately appeal and the Hendricks cross-appeal.

## II. Scope of Review

 This case was tried to the court as a law action and our review is for the correction of errors at law. *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336, 338 (Iowa 1989). The district court's findings of fact have the effect of a jury verdict and are binding on us if supported by substantial evidence. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings. *Id.* Evidence is not insubstantial merely because it would have supported contrary inferences. *Id.*

 We construe the district court's findings broadly and liberally. *Id.* In case of doubt or ambiguity we construe them to uphold, rather than defeat, the judgment. *Id.* A corollary rule prohibits us from weighing the evidence or the credibility of the witnesses. *Id.*

## III. Causation

 Both defendants contend the evidence was insufficient to support the district court's finding that the fire was caused by the ignition of insulation which had been packed in around the chimney flue. There was evidence that the manufacturer's instructions called for the installation of an attic radiation shield around the chimney flue to maintain a safe clearance from combustibles. Likewise, the insulation packages warned that barriers should be used to keep the insulation away from light fixtures and flues. No radiation shield was installed and no barriers were used to keep the insulation from being packed around the chimney flue. There was also evidence indicating inadequate vertical support caused a separation in the seam of the chimney flue which could have allowed flue gases to escape and contribute to the fire.

When the fire was first discovered, the plaintiffs observed it coming from the roof area in the back of their home. This was consistent with the physical, photographic, and expert evidence which indicated that heat from the chimney flue ignited the cellulose insulation. There was sufficient

evidence to support the trial court's findings of causation, and we affirm.

## IV. Spoliation of Evidence

The defendants contend the district court erred by not sanctioning the Hendricks and State Farm for spoliation of evidence. They argue Woodland's and Belina's testimony should have been excluded because State Farm failed to notify defendants they were targets of a subrogation claim until nearly a year after the fire, and after the fire scene had been demolished. The defendants contend the trial court should have held State Farm had a duty to preserve the evidence.

The defendants also dispute that a finding of bad faith is required before sanctions may be imposed for spoliation of evidence in a civil action. They ask that the standard be modified to allow for the imposition of sanctions in the absence of bad faith or an intent to destroy evidence. The defendants alternatively argue the record does not support the trial court's finding of a lack of bad faith by State Farm.

■■■ The intentional destruction of evidence is referred to as spoliation, and when it is established the fact finder may draw the inference that the evidence destroyed was unfavorable to the party responsible for its spoliation. *State v. Langlet,* 283 N.W.2d 330, 333 (Iowa 1979).

> Spoliation involves more than destruction of evidence. Application of the concept requires an intentional act of destruction. Only intentional destruction supports the rationale of the rule that the destruction amounts to an admission by conduct of the weakness of one's case.

*Id.* Iowa remedies for spoliation of evidence include imposing discovery sanctions, barring duplicate evidence where fraud or intentional destruction is indicated, and instructing on an unfavorable inference to be drawn from the fact that evidence was destroyed. *Meyn v. State,* 594 N.W.2d 31, 34 (Iowa 1999).

■■■ We agree with the trial court's assessment that the evidence does not support a finding of an intentional destruction of evidence. Woodland and Belina extensively photographed the fire scene and preserved portions of the flue pipe, wire, and insulation located in the area of the fire's origin. This evidence was preserved and available for examination by the defendants.

The defendants argue the fire started elsewhere in the home and the entire fire scene, not just evidence from where the fireplace flue entered the attic, should have been preserved. Three days after the fire, Colony had an insurance adjustor present at the scene who took thirty-two photographs. Ivan Anderson, a representative of Great Plains, was also present at the fire scene and was told the fireplace may have been involved. Both Colony and Great Plains were aware a fire had destroyed a new home for which they had recently provided construction services. Nothing in the record suggests they would have been precluded from further visiting the fire scene and conducting an additional investigation had they sought to do so. The plaintiffs were not required to preserve the fire scene indefinitely, and the demolition of the home in April 1994, did not constitute the spoliation of evidence.

Given the facts of this case, we need not reach the question of whether the bad faith element required in criminal spoliation claims also applies in civil actions. Likewise, we need not determine whether under different circumstances a plaintiff might be obligated to notify potential defendants of possible claims and give them a reasonable opportunity to examine a fire scene before its destruction. *See, e.g., Howell v. Maytag,* 168 F.R.D. 502 (M.D.Pa.1996); *Baliotis v. McNeil,* 870 F.Supp. 1285 (M.D.Pa.1994); *Northern Assurance Co. v. Ware,* 145 F.R.D. 281 (D.Me.1993).

## V. Subrogation

Great Plains asserts State Farm had no right to pursue a subrogation claim against it. It argues its contract with the Hendricks required them to maintain fire and extended coverage (builder's risk) insurance that would have protected Great Plains from liability for the loss. It maintains that by virtue of this agreement the Hendricks became Great Plains' insurer. Great Plains reasons that since an insurer cannot bring a subrogation claim against its insured, State Farm (whose rights rise no higher than those of the Hendricks) also could not bring a subrogation claim.

This argument must fail. There was substantial evidence in the record that the plaintiffs acquired builder's risk insurance as required by their contract with Great Plains. State Farm admitted the existence of builder's risk insurance in its response to a request for admissions and in the testimony of Terry Eovaldi, its operations supervisor for personal lines. State Farm also completed a form for Great Plains confirming that the Hendricks had builder's risk insurance. Nothing in the contract required that Great Plains be named as an insured, and the Hendricks were not the insurer for Great Plains. As a result, State Farm was not precluded from pursing a subrogation claim against Great Plains.

In addition, Great Plains' argument must also fail because the builder's risk coverage had ceased at the time of the fire. Great Plains had acquiesced to the Hendricks' occupation of the home for nearly two months prior to the fire even though it had not yet been paid in full. Under its contract with the Hendricks, Great Plains had agreed that the owners' occupancy of the home signified its completion. Testimony from State Farm's representative established that the builder's risk insurance coverage ceased when the home was completed and occupied.[1] Great Plains' status as an "insured" would not have made any difference as the builder's risk coverage had expired and had reverted to regular homeowner's coverage at the time of the fire.

Great Plains alternatively argues that because of the inclusion of a builder's insurance requirement in the agreement, the Hendricks waived their right to seek recovery for the fire damage. The parties' agreement contains no reference to a waiver, and we decline to read such a significant limitation into the contract.

## VI. Negligent Misrepresentation

Great Plains argues State Farm negligently misrepresented that it had issued builder's risk coverage and it should be estopped as a matter of law from denying the existence of such insurance. It contends the Hendricks' "Dwelling Under Construction Endorsement" covered only the temporary quarters in which they resided and did not include their new home while it was under construction.

The duty to use reasonable care in supplying information applies only to persons engaged in the business or profession of supplying information to others. *Fry v. Mount*, 554 N.W.2d 263, 266 (Iowa 1996). Without facts to show a person is in the business of supplying information to others, no duty arises. *Id.*

Assuming, without deciding, that State Farm was in the business of supplying information to others, Great Plains cannot establish that there was a misrepresentation. State Farm admitted that the coverage obtained by the Hendricks included builder's risk coverage for their

---

1. We note that Great Plains had the Hendricks present a form to State Farm to confirm the existence of their builder's insurance, and that form indicated the builder's risk coverage automatically expired "upon completion and payment in full." It is the terms of the Hendricks' coverage with State Farm, not the language in this form, which governs when the builder's risk coverage ceased. The builder's risk coverage had ceased at the time of the fire, even though Great Plains had not yet been paid in full.

home while it was under construction. Even if the "Dwelling Under Construction Endorsement" referred only to the Hendricks' temporary living quarters, Great Plains cannot demonstrate that it was injured by the alleged misrepresentation. In the preceding section of this opinion we found the purported builder's risk coverage ceased to exist upon the plaintiffs' occupancy of the house. The fire which destroyed the home would not have been covered by the builder's risk coverage and would not have provided any relief from liability to Great Plains. The claim of negligent misrepresentation is rejected.

## VII. Equitable Estoppel

Colony claims the district court erred by failing to find the Hendricks' claim was barred by the doctrine of equitable estoppel. Colony contends that on February 15, 1994, State Farm's fire investigator, John Woodland, represented to Colony's insurance adjustor, Richard Seifers, that Colony was not responsible for the fire.

Colony maintains it was misled by Woodland's statements, and by State Farm's later silence, about the possibility of litigation, and as a result it did not bother to conduct an independent investigation of the fire scene. Colony contends it was prejudiced as a result and State Farm should have been estopped from pursuing a negligence claim against it.

■ Application of the doctrine of equitable estoppel is based on the concept that one who has made certain representations should not thereafter be permitted to change his or her position to the prejudice of one who has relied thereon. *Fernandez v. Iowa Dep't of Human Servs.*, 375 N.W.2d 701, 708 (Iowa 1985). It may be utilized when injustice would otherwise result. *Id.* The elements of equitable estoppel are well established:

1) a false representation or concealment of material facts;

2) lack of knowledge of the true facts on the part of the actor;

3) intention that it be acted upon; and

4) reliance thereon by the party to whom made, to his prejudice and injury.

*Id.* Equitable estoppel may not be established if any one of these elements is lacking. *Id.*

■ The trial court rejected Colony's estoppel claim finding State Farm was not bound by Woodland's statements. We agree with its holding that Woodland was not acting as State Farm's agent. A basic element of agency law is that whatever an agent does within the scope of the agent's actual authority binds the agent's principal. *Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 481 (Iowa 1997).

Actual authority to act is created when a principal intentionally confers authority on the agent either by writing or through other conduct which, reasonably interpreted, allows the agent to believe that he has the power to act. Actual authority includes both express and implied authority. Express authority is derived from specific instructions by the principal in setting out duties, while implied authority is actual authority circumstantially proved.

*Dillon v. City of Davenport*, 366 N.W.2d 918, 924 (Iowa 1985) (citations omitted).

■ Apparent authority is authority which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing. *Magnusson Agency v. Public Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 25–26 (Iowa 1997). Apparent authority must be determined by what the principal does, rather than by any acts of the agent. *Id.* The burden of showing that an agent acted within the scope of the agency's actual or apparent authority is on the party claiming that such authority existed. *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 847 (Iowa 1989).

Colony relies on our decision in *Briney v. Tri–State Mutual Grain Dealers Fire*

*Insurance Co.,* 254 Iowa 673, 117 N.W.2d 889 (1962), to argue State Farm should be bound by the representations made by Woodland. In *Briney,* we held knowledge obtained by an insurance adjustor, even when the adjustor was an independent contractor hired for one job at a time, was imputed to the insurer. *Briney,* 254 Iowa at 683, 117 N.W.2d at 895. Essential to our analysis in that case was our recognition that an adjustor is clothed with the authority to adjust a loss with an insured and his powers and authority are coextensive with the business entrusted to his care. *See id.*

In the present case Woodland was not retained to adjust or compromise any claim on behalf of the insurer. Instead, he was merely hired to investigate the cause of a fire which destroyed property covered under a policy issued by the insurer. State Farm was not bound to accept Woodland's findings or conclusions of causation. Nothing in the record supports a finding that State Farm conferred actual authority upon Woodland to make binding representations regarding the liability of potential defendants. Nor is there evidence that State Farm knowingly permitted or held Woodland out to possess such authority.

Colony cannot establish that State Farm made a fraudulent misrepresentation or concealed a material fact. We need not address whether it can establish any of the other elements of equitable estoppel.

## VIII. Damages

In their cross-appeal, the Hendricks assert the trial court erred in failing to award damages based on the replacement cost of their home. The district court awarded the plaintiffs the following amounts of damages:

| | |
|---|---|
| $ 60,116.66 | (personal property) |
| $ 1,000.00 | (property not readily subject to valuation, *e.g.,* photos) |
| $ 5,852.55 | (living expenses incurred while home was being rebuilt) |
| $312,000.00 | (damage to home) |
| $378,969.21 | (total) |

On appeal, the plaintiffs challenge only the amount awarded for the damage to their home. They claim the cost to rebuild their home was $408,423 and the district court erred in failing to award them damages based on that amount.

"It is axiomatic that the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed." *Dealers Hobby, Inc., v. Marie Ann Linn Realty Co.,* 255 N.W.2d 131, 134 (Iowa 1977). Where the injury is such that the premises may be restored to as good condition as they were before being damaged, the measure of recovery is the fair and reasonable cost and expense of such restoration. *Schiltz v. Cullen–Schiltz,* 228 N.W.2d 10, 21 (Iowa 1975).

"The general rule in Iowa for repairs or for replacement is the fair and reasonable cost of replacement or repair, but not to exceed the value of the property immediately prior to the loss or damage." *State v. Urbanek,* 177 N.W.2d 14, 16 (Iowa 1970). An appraiser, Randy Roy, testified regarding the value of the plaintiffs' home before the fire. He utilized two methods of valuation. Using a cost-approach method he valued the property at $467,436. Relying on an analysis of comparable sales, he determined the value of the plaintiffs' property was $450,000. Roy testified this latter figure was probably the more accurate valuation of what the plaintiffs' property was worth before the fire.

The plaintiffs argued that since the replacement cost ($408,423) did not exceed the pre-fire valuation ($450,000), the trial court should have awarded them $408,423 for the cost of rebuilding their home. Conversely, the defendants argued the pre-fire valuation of the home should be reduced by the value of those portions of the property which were not damaged by the fire. Citing the cost-approach figures used in Roy's appraisal, they contended the pre-fire valuation should be calculated as follows:

$450,000 (pre-fire value of property)
- 32,136 (value of basement foundation)
$417,864
- 20,000 (value of detached garage)
$397,864
- 70,000 (value of land)
$327, 864
- 15,000 (value of on-site improvements, well and septic)
$312,864 (defendants' pre-fire valuation of home)

The district court held the plaintiffs' recovery was limited to a cost-approach valuation of $312,000, and it noted that was the amount for which the Hendricks had insured their home.

On appeal, the plaintiffs contend they were entitled to the replacement cost of the residence. We agree. Our case law provides that a party may recover the replacement cost if it does not exceed the value of the property prior to injury. *See id.* In determining the value of the plaintiffs' residence before the fire, we use the value of the home in its entirety, even if that includes portions of the home which were allegedly undamaged by the fire and were utilized in the reconstruction. Those portions of the home are integral parts of the residence and contribute to an enhanced value that exceeds the value of its separate parts. It is that value, the sum all of the parts, to which the plaintiffs are entitled to be restored.

The defendants' valuation arguments also fail for other reasons. First, we note that the $408,423 replacement cost included Novak Construction's obligation to demolish the existing house and burn or haul away debris. The plaintiffs were entitled to recover this clean up cost as an element of damages separate from the replacement cost of rebuilding their home. See *Schiltz*, 228 N.W.2d at 21 (expenses incurred as part of clean up operation are recoverable).

We also note that the plaintiffs invested a considerable amount of their own time and effort in overseeing some of the subcontracting for their first house and they contributed "sweat equity" toward its construction. They did not do this during the rebuilding of their home and apparently placed responsibility for its construction entirely in the hands of Novak Construction. The defendants cannot expect the plaintiffs to again expend considerable time and personal labor in order to reduce the replacement cost occasioned by the defendants' negligence.

Finally, we note there was no evidence indicating the replacement costs were excessive. The Hendricks' new home was virtually identical to the home which had been destroyed by fire, and they did not use the highest bidder for its reconstruction. Under the circumstances of this case, we find as a matter of law $408,423 was the fair and reasonable cost of replacement.

We hold the district court should have awarded the following damages:

$ 60,116.66 (personal property)
$ 1,000.00 (property not readily subject to valuation, e.g., photos)
$ 5,852.55 (living expenses incurred while home was being rebuilt)
$408,423.00 (replacement cost for damage to home)
$475,392.21 (total)

This case is remanded for entry of a judgment in accordance with this opinion.

IX. Conclusions

In conclusion, we hold there was sufficient evidence to support the district court's findings regarding the cause of the fire and the defendants' liability therefore. We hold no spoliation of evidence occurred as the defendants were aware of the fire before the destruction of the fire scene and the plaintiffs' investigators preserved physical and photographic evidence from the site of the origin of the fire.

We hold the plaintiffs had acquired builder's risk insurance coverage from State Farm, State Farm made no negligent misrepresentations regarding the existence of the coverage, the defendants were not insureds under the policy, the coverage had ceased prior to the fire, and State Farm was entitled to pursue a subrogation claim against Great Plains. We hold the plaintiffs were not equitably es-

topped by the statements of its fire investigator from pursuing a negligence claim against Colony. Finally, we hold the plaintiffs were entitled to recover damages for the replacement cost of their home as above stated.

**AFFIRMED ON APPEAL, REVERSED ON CROSS–APPEAL, AND REMANDED WITH DIRECTIONS.**