# IN THE COURT OF APPEALS OF IOWA

No. 16-1825
Filed August 16, 2017

**KEVIN ROWLEY,**
        Plaintiff-Appellee,

**vs.**

**TOM HARRIS and TOM HARRIS d/b/a TOM HARRIS AUCTION CENTER,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Marshall County, Michael J. Moon, Judge.

        A defendant appeals following the district court's decision in a breach of agreement case. **AFFIRMED.**

        C. Aron Vaughn and Barry S. Kaplan of Kaplan & Frese, LLP, Marshalltown, for appellants.

        Douglas W. Beals of Moore, McKibben, Goodman & Lorenz, LLP, Marshalltown, for appellee.

        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

Tom Harris and Tom Harris d/b/a Tom Harris Auction Center (Harris) appeal the district court's decision concluding Harris breached the parties' agreement to sell Kevin Rowley's property at auction. Because we find substantial evidence to support the district court's conclusions, we affirm.

Kevin and Beth Rowley dissolved their marriage in 2009. As part of the property distribution, the court ordered the parties to sell their extensive collection of antiques and collectibles at auction. Harris was a witness at the dissolution trial, and the dissolution court noted Harris testified

> the property should be collected, taken to [Harris's] storage facilities, identified, marked, photographed and ready for sale. He believed that as many as ten separate and distinct auctions should be held to clear all of the inventory. Harris said that he would have several sales because he would bring in the hodge-podge, the various classifications of antiques and have specialty sales. For example, he stated that he would have a large furniture sale, a toy sale, and an advertising sale. Harris said that the normal commission for sales of that type was 20% plus advertising costs. Because he has dealt with the parties in the past, he said that he would do their sales for a 15% commission plus advertising.

In the dissolution decree, the court ordered: "The antiques and collectibles of the parties shall be placed into the hands of Tom Harris of Harris Auction for sale and disposition." A dispute later arose regarding what it meant to place the property "into the hands of" Harris. A subsequent hearing occurred, and the court issued a supplemental order that provided:

> It was the intent of the undersigned at the time the decree was prepared and filed that the questioned phrase simply mean that the collectibles and antiques of the parties would be entrusted to Harris for sale in accordance with his usual and customary practices. It certainly was not within the contemplation of the court that the parties would themselves be responsible for transporting those items to Harris. Harris explained during trial that his business was

fully equipped and had considerable experience in gathering property for auction from off-site locations and transporting those items to his place of business. He testified at the hearing conducted yesterday that he himself preferred to observe, identify, inventory, and transport the various items himself. He further testified that there would be no additional cost savings if the parties, or either of them, transported the property to Harris. He would have to undergo the same procedures once the property arrived at his facility that he would have undertaken if he had collected the property himself.

The court then ordered that "the responsibility for transporting the parties' antiques and collectibles for auction sale shall be solely that of Tom Harris." Rowley agreed that Harris's fee would include the commission, plus advertising and $15 per hour for transportation. The auctions were held over the course of a year and ultimately grossed $407,462.50. From this amount, Harris deducted his commission and advertising, along with $6383 for moving expenses and $39,810 for labor, which amounted to 2654 hours. Rowley filed suit in February 2015 alleging Harris breached the agreement by overcharging for the labor and expenses of moving.

The matter was tried to the same judge who presided over the dissolution proceedings. The court found "that Harris is entitled to a 15% commission, 10% advertising fee, the buyer premium,[1] and $15 per hour for labor transporting the goods to his place of business." The court noted it was Rowley's position that once the property reached Harris's place of business any work done should be part of the commission. This included the labor to move the property around to ready it for sale and the expenses incurred in doing so. Rowley's contention was supported by his expert's testimony. The court stated the expert testified:

---

[1] "Buyer's premium" is a surcharge on the bid price, paid by the buyer, and retained by the auctioneer.

> [T]he auctioneer commission usually covers transportation of the property to be sold. If the property is moved about after being placed in the possession of the auctioneer, that expense must be absorbed by the auctioneer. That is also true for cleaning, organizing, fixing, when necessary, and photographing the items for sale.

The court agreed with Rowely and his expert that the expenses Harris deducted from the auction proceeds "are expenses that would normally be paid by the auctioneer as part of his commission earned." The court further agreed that the labor expenses incurred after the property was moved to Harris's business location "are charges ordinarily and customarily absorbed by the auctioneer as part of his service. The auctioneer is reimbursed for those expenses through the commission and the buyer premium." The court then reviewed the hours submitted and determined 787 hours of the 2654 hours claimed under the $15.00 per hour transporting costs was "a reasonable amount of time for the gathering, identifying, collecting, and transporting of the goods to the Harris auction facility. The work incurred subsequent to delivery to the auction site must be absorbed by Harris." The court then awarded Rowley $17,194 plus interest.[2]

Harris appeals asserting substantial evidence does not support the court's conclusion that he breached the parties' agreement or that Rowley suffered damages as a result of the breach. Harris notes there is no written agreement and the only terms of the agreement that can be discerned from the record are his 15% commission and advertising costs. Harris asserts there was no agreement between the parties "as to what was to be included in the commission

---

[2] Because she was satisfied with the work Harris did and the fees charged, Beth did not join Kevin in this lawsuit. Harris therefore was not responsible to pay an additional $17,194 which was Beth's one-half of the overcharged expenses and labor.

and marketing percentages or transport costs."  Therefore, he asserts the evidence of the terms and conditions of the agreement was wholly insufficient to satisfy Rowley's burden of proof.  Harris claims his testimony established that he agreed to the 15% commission arrangement because he believed he could conduct some of the auctions at Rowley's property, but Rowley's behavior at that time necessitated Harris taking custody of all of the property immediately and holding all auctions at his location, which substantially increased his costs in light of the amount of property to be sold.  He likewise asserts that even if there is evidence of the terms of the agreement, there was no evidence he breached the agreement or that Rowley sustained damages.

As this matter was tried to the court as a law action, our review of the district court's conclusions is for the correction of errors at law.  *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 490 (Iowa 2000).  "The district court's findings of fact have the effect of a jury verdict and are binding on us if supported by substantial evidence.  Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings."  *Id.*

To prove a breach of contract, Rowley had to prove

(1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, and (5) that plaintiff has suffered damages as a result of defendant's breach.

*See Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (alteration in original).  This dispute centers on the second element—the terms and conditions of the contract—particularly what services were included in the

15% commission Harris received from the gross sale of the property and what could be included in the transporting costs.

In contract interpretation, the intent of the parties at the time of the contract is the cardinal principle. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 466 (Iowa 2010). This intent is generally discerned from the words used in the contract and the conduct of the parties. *Id.* But courts may also look to extrinsic evidence "when interpreting the meaning of a contract" such as, "the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties." *Id.* (citation omitted).

Where the intention of the parties with respect to the meaning of the term commission is in conflict, the district court accepted the testimony of Rowley's expert, who had sixteen years of experience in the auction industry. The expert testified that it was his understanding of the industry that once the property to be sold is in the auction company's possession, any work that needs to be done to sell the property is compensated by the commission. The expert testified it was not normal for an hourly rate to be paid to the auction company once the property is in the company's possession. Based on this testimony, the district court concluded, "Those expenses charged after the property was placed into the hands of Harris at his auction facility are charges ordinarily and customarily absorbed by the auctioneer as part of his service. The auctioneer is reimbursed for those expenses through the commission and the buyer premium." We conclude substantial evidence supports the district court's interpretation of the commission in the parties' agreement and its conclusion that by charging for

expenses and labor after taking possession of the property, Harris breached the agreement. Likewise, substantial evidence supports the district court's determination of damages based on Harris's itemization of the hours charged and description of the expenses incurred.

Because substantial evidence supports the district court's decision, we affirm the district court's award of damages to Rowley.

**AFFIRMED.**