# IN THE COURT OF APPEALS OF IOWA

No. 20-1321
Filed November 23, 2021

**S3 DEVELOPMENT, LLC,**
    Plaintiff-Appellant,

**vs.**

**HGR INVESTMENTS, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,
Judge.

The plaintiff appeals district court's grant of summary judgment in the
defendant's favor. **AFFIRMED.**

Louis R. Hockenberg, Michael Streit and J. Mason Bump (until withdrawal)
of Sullivan Ward, P.C., West Des Moines, for appellant.

Daniel P. Kresowick of Brick Gentry P.C., West Des Moines, for appellee.

Considered by Tabor, P.J., Ahlers, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**AHLERS, Judge.**

S3 Development, LLC (S3) appeals the grant of summary judgment in favor of HGR Investments, Inc. (HGR). S3 argues a genuine issue of material fact exists over whether S3 entered a contract with HGR through HGR's agent and whether HGR ratified the contract. We reject S3's arguments and affirm.

## I. Background Facts & Proceedings

The facts needed to resolve this appeal are gleaned from the parties' filings in support of and in resistance to HGR's motion for summary judgment. In resistance to HGR's motion, S3 provided an affidavit from one of its representatives, Mike Stessman. According to Stessman's affidavit, he and two friends established S3 in early 2017 "for the purpose of acquiring land, constructing Starbucks facilities, and leasing the facilities to operators." In trying to achieve this goal, they met Todd Raufeisen, who claimed he was the "R" in HGR. Raufeisen stated he had contacts with Starbucks and could secure commercial tenants for S3's purposes. In February 2017, Raufeisen and S3 signed a consulting contract under which S3 would pay Raufeisen for assistance in the planning and procurement processes for Starbucks locations. Several of Raufeisen's emails to S3 contained the following signature block:

> Todd B Raufeisen
> HGR Investments
> todd@hgrinv.com

However, Raufeisen sent these emails from a different address with no apparent connection to HGR. Raufeisen eventually provided S3 with three documents titled "Starbucks Letter of Intent," which purportedly showed Starbucks's intention to enter into three separate leases with S3 for commercial space.

According to Stessman's affidavit, Raufeisen informed S3 in September 2017 that he had been criminally charged and would be going to prison.[1]  Soon after this disclosure, Raufeisen introduced S3 to one of his fellow "partners" at HGR.  After meeting, one of the principals of HGR assured Stessman that he would take over Raufeisen's role and secure leasing agreements with Starbucks or other commercial tenants if necessary.

At some point, S3 learned Raufeisen falsified the communications appearing to come from Starbucks, including the letters of intent.  After the anticipated leases with Starbucks failed to materialize, S3 filed a petition against HGR.  S3 alleged Raufeisen was HGR's agent and HGR committed breach of contract and fraudulent misrepresentation through the actions of Raufeisen.  S3 sought damages for fees it paid under the consulting contract and related expenses.  HGR moved for summary judgment, asserting it could not be held liable for the contract because it was not a party to the contract, it was not incorporated when the contract was executed, and Raufeisen was not an agent of HGR.[2]  The district court granted HGR's motion for summary judgment, and S3 now appeals.

---

[1] *See United States v. Raufeisen*, 748 Fed. Appx. 704, 704 (7th Cir. 2019) ("Todd Raufeisen ran a Ponzi scheme that defrauded at least 22 investors, many of them close friends or family members, of over $1.7 million.  He pleaded guilty to wire fraud . . . and money laundering . . . .  The district court sentenced Raufeisen to an above-guideline term of 72 months in prison and three years of supervised release.").

[2] HGR answered an interrogatory by stating, "Raufeisen has never been a shareholder, director, officer, or employee of HGR, nor has [Raufeisen] ever been authorized to act on HGR's behalf."  HGR later amended its answer to acknowledge that "Raufeisen was an independent commission consultant from approximately March 2017 until October 2017," by which Raufeisen "acted as an intermediary between real estate owners and prospective purchasers" like HGR.  Whatever duties Raufeisen performed as "an independent commission

## II.    Standard of Review

We review a grant of summary judgment for correction of errors at law. *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011).  In determining whether the grant was proper,

> we ask whether the moving party has demonstrated the absence of any genuine issue of material fact and is entitled to judgment as a matter of law.  The resisting party must set forth specific facts showing that a genuine factual issue exists.  Summary judgment is proper if the only issue is the legal consequences flowing from undisputed facts.

*Id.* (quoting *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993)).  A material issue is one that may affect the outcome of the suit.  *Id.*  We must look at the facts in the light most favorable to the nonmoving party, and we will draw all reasonable inferences in the nonmoving party's favor.  *Id.* at 543.  A legitimate inference is one that "is 'rational, reasonable, and otherwise permissible under the governing substantive law.'"  *Id.* (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa 2001)).  However, it is not a permissible inference if it is only based on speculation or conjecture.  *Id.*  The district court is not to make credibility assessments when considering a motion for summary judgment, as credibility determinations are a responsibility for the fact finder.  *Frontier Leasing Corp. v. Links Eng'g, LLC*, 781 N.W.2d 772, 776 (Iowa 2010).  If reasonable minds may differ, a genuine issue of material fact exists.  *Peak*, 799 N.W.2d at 542.

---

consultant," they were performed after S3 had already entered the consulting contract with Raufeisen.

## III. Analysis

S3's claim hinges on its ability to establish that Raufeisen was HGR's agent with authority to bind HGR to the consulting contract. Agency can be established by actual or apparent authority. *Frontier Leasing*, 781 N.W.2d at 776.

> Actual authority to act is created when a principal intentionally confers authority on the agent either by writing or through other conduct which, reasonably interpreted, allows the agent to believe that he has the power to act. Actual authority includes both express and implied authority. Express authority is derived from specific instructions by the principal in setting out duties, while implied authority is actual authority circumstantially proved.

*Id.* (emphasis omitted) (quoting *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 493 (Iowa 2000)). "Apparent authority is authority the principal has knowingly permitted or held the agent out as possessing." *Id.* Thus, actual authority focuses on the principal's communications to the agent, while apparent authority focuses on the principal's communications to third parties. *Id.*; *Hendricks*, 609 N.W.2d at 493. Under both actual and apparent authority, the alleged principal's communications and actions must lead to the agency relationship. *Id.* As the party asserting an agency relationship, S3 must ultimately prove Raufeisen was an agent of HGR by a preponderance of the evidence. *See Hendricks*, 609 N.W.2d at 493.

S3 argues the record, including Stessman's affidavit and emails from Raufeisen, shows a connection between HGR and Raufeisen that generates a genuine issue of material fact whether Raufeisen was HGR's agent. We disagree. HGR's interrogatory answer asserted Raufeisen never held a position with HGR or had authority from HGR that would have permitted Raufeisen to act on HGR's behalf. This assertion was not rebutted by any evidence of anything said or done

by HGR. Not having any evidence of anything HGR did to establish an agency relationship, S3 focuses instead on Raufeisen's statements and conduct. But it is the action of the purported principal, not the purported agent, that establishes an agency relationship. *Frontier Leasing*, 781 N.W.2d at 776 ("Apparent authority must be determined by what the principal does, rather than by any acts of the agent." (quoting *Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 26 (Iowa 1997))). As a result, absent some evidence that HGR bestowed agency authority on Raufeisen, it does not matter what Raufeisen said or did in terms of creating an agency relationship. In other words, Raufeisen could claim he was an agent of HGR in any way he chose, but unless HGR communicated such agency authority to Raufeisen or S3, no agency relationship was created. *See id.*

Nothing in the record supports a finding that anything HGR did gave Raufeisen actual authority to bind the corporation in any way, either as an express grant of authority or an implied grant of authority. Furthermore, there is no evidence anyone associated with HGR held out Raufeisen as its agent. S3 does not allege that anyone from HGR claimed an agency relationship. Also, HGR is not mentioned in the consulting contract. Rather, the contract is printed on "Raufeisen Development" letterhead. Raufeisen signed the contract using only his name. S3 acknowledges it paid fees under the contract to Raufeisen only, and there is no evidence HGR received compensation or other consideration from the consulting contract. S3 first communicated with someone from HGR after Raufeisen disclosed he would be going to prison and long after the consulting contract was signed. While HGR then tried to secure a commercial tenant for S3

as Raufeisen contracted to do, there is no evidence HGR acted because it believed Raufeisen had bound it to the consulting contract. Instead, the evidence suggests HGR viewed its relationship with S3 as a new business opportunity. Stessman's affidavit asserts HGR never denied an agency relationship. While failure to repudiate an unauthorized action may give rise to an agency relationship, there is no evidence HGR knew or should have known Raufeisen purportedly took any action on its behalf. *See Fort Dodge Creamery Co. v. Com. State Bank*, 417 N.W.2d 245, 247 (Iowa Ct. App. 1987). As the record does not support finding Raufeisen possessed actual or apparent authority to act on behalf of HGR, HGR was not bound to the consulting contract.

Alternatively, S3 asserts HGR ratified the consulting contract with its later actions. "A principal may ratify the unauthorized act of an agent." *Life Invs. Ins. Co. of Am. v. Est. of Corrado*, 838 N.W.2d 640, 644 (Iowa 2013). Our supreme court has provided the following elements of ratification: "(1) the existence of a principal"; "(2) an act done as agent"; "(3) principal's knowledge of material facts"; and "(4) intent of the principal to ratify the agent's act which can be either express or implied." *Abodeely v. Cavras*, 221 N.W.2d 494, 502 (Iowa 1974) (citing Restatement (Second) of Agency §§ 85, 87, 91, 93(1), 94)). Another factor "is the acceptance of the benefits of an agent's unauthorized act." *Id.* S3 failed to prove these factors. As explained above, the record does not support finding HGR and Raufeisen had a principal-agent relationship or even that Raufeisen purported or assumed he was HGR's agent. There is no evidence HGR knew the full extent of Raufeisen's actions. *See id.* ("To ratify the principal must have full knowledge of the facts."). There is no evidence HGR intended to ratify Raufeisen's actions. *See*

*id.* ("Intent is a necessary element of ratification."). Nor is there any evidence HGR benefited from the consulting contract. *See id.*; *see also Corrado*, 838 N.W.2d at 647 ("A person should not be able to accept the benefits of a contract even if the signer's acts are unauthorized, but deny his or her obligations under the contract because the signer's acts are unauthorized."). There is thus no evidence HGR ratified the consulting contract.

With no evidence to support finding Raufeisen was HGR's agent or that HGR ratified the consulting contract, there is no genuine issue that HGR was not bound to the contract. Thus, S3's breach-of-contract claim fails. Similarly, S3's fraudulent-misrepresentation claim is based on allegations HGR committed fraud "due to its knowledge of Raufeisen's activities as agent of HGR and based on its ratification of the" consulting contract. Again, no evidence supports finding Raufeisen was an agent of HGR or that HGR ratified the contract, so the fraudulent-misrepresentation claim also fails. The court thus did not err in granting summary judgment for HGR on the breach-of-contract and fraudulent-misrepresentation claims.

Finally, S3 argues the grant of summary judgment "was premature due to the ongoing development of new evidence in discovery." The nature of this claimed error is unclear. S3 moved to continue the summary judgment hearing, and the district court denied this motion about four days before the hearing. However, the order denying the motion stated that the court "will consider any arguments regarding continuing a decision on summary judgment at the . . . hearing." Presumably, this statement in the order was an acknowledgment that the court would consider postponing a ruling to give S3 more time pursuant to Iowa

Rule of Civil Procedure 1.981(6). Despite the court's invitation, S3 did not renew its motion to continue to the district court, nor did the court rule on S3's contention that ongoing discovery is a basis to deny summary judgment. S3 did not file a motion under Iowa Rule of Civil Procedure 1.904(2) asking the court to rule on this contention. Further, S3's reply brief expressly states "S3 does not appeal the denial of" its motion to continue. On the issue S3 raises, S3 does not specify what discovery it seeks other than "meaningful discovery responses and depositions of [HGR's] officers and shareholders." Based on these circumstances, any argument that summary judgment was premature is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

## IV.    Conclusion

Because there is no evidence in the record to support finding Raufeisen was an agent of HGR or that HGR ratified the consulting contract, we find no error in granting summary judgment for HGR. Any argument summary judgment was premature is not preserved for our review.

**AFFIRMED.**