# IN THE COURT OF APPEALS OF IOWA

No. 24-1185
Filed August 6, 2025

**CENTRAL IOWA INVESTORS, L.C.,**
    Plaintiff-Appellant,

**vs.**

**BROOKSTONE SPECIALTY SERVICES, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Story County, James C. Ellefson, Judge.

Central Iowa Investors, L.C. appeals the judgment entered on its claim for damages stemming from a lease dispute with Brookstone Specialty Services, Inc. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Jeffrey P. Schultz, Louis R. Hockenberg, J. Michael Boomshine Jr., and Andrew G. Carlson (until withdrawal) of Sullivan & Ward, P.C., West Des Moines, for appellant.

Julie Vyskocil, Douglas A. Fulton, Eldon McAfee, and Keegan Cassady, West Des Moines, for appellee.

Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Central Iowa Investors, L.C. (CII) appeals the judgment for damages stemming from a lease dispute with Brookstone Specialty Services, Inc. (Brookstone). CII seeks an award for the full cost of repairing the damage it claims Brookstone caused to its property, in addition to lost rent, attorney fees, and costs. Because substantial evidence supports the district court's award of damages, we affirm in part. But we reverse the denial of attorney fees and costs and remand for further proceedings.

**I. Background Facts and Proceedings.**

CII owns a pre-engineered metal building built in Ames in 2005. The building "is 60 feet by 60 feet (3600 square feet) and roughly 20 feet high. It has two overhead doors that will accommodate large tractor-trailers, and two personnel doors, all in the east wall." From 2005 through 2012, CII used the building to store equipment for a landscaping business. The building was empty for about six months before CII began leasing it to Brookstone.

Brookstone has provided truck-trailer-washing services for more than twenty years. Most of its business involves washing out livestock trailers, though it also washes agriculture equipment and tanker trailers. Brookstone entered three leases with CII, renting the building from June 1, 2013, through May 31, 2022.[1] Although the first two leases stated that Brookstone would use the premises for a "trucking & equipment installation shop," CII learned that Brookstone was

---

[1] The first two leases were signed by predecessors of Brookstone, but the district court noted that "the case was generally tried as if [Brookstone] was the tenant for the entire nine-plus years."

operating a commercial truck and trailer washing business in 2013. In the lease covering June 1, 2019, until May 31, 2022, the "use of premises" language was amended to state Brookstone would occupy the premises for "truck, trailer, equipment wash & installation shop."

Brookstone paid CII a $1450 security deposit and took the premises "in its present condition." The lease assigned CII with maintaining and repairing the structural parts of the building, defined as "the foundation, exterior walls, load bearing components of interior floors and walls, the roof and all sewers, pipes, wiring and electrical fixtures outside of the structure." CII was also responsible for maintaining "all common area under [its] control." Brookstone was responsible for performing and paying for repairs to all other areas.[2] Both parties were required to "perform their responsibilities of repair and maintenance" and keep the premises "in a safe and serviceable condition."

The lease also required that on termination, Brookstone would "surrender and deliver the premises in good and clean condition, except the effects of ordinary wear and tear and depreciation arising from lapse of time, or damage without fault or liability." Brookstone was required to "remove any fixtures or equipment which [it] installed in the premises, providing [it] repairs any and all damages caused by removal." Finally, the lease made each party "liable to the other for all damage to

---

[2] These areas are listed in the lease as: interior walls, floors, and ceilings; sewer, plumbing fixtures, pipes, wiring; electrical fixtures within the structure; heating equipment; air conditioning; plate glass replacement; sidewalks; parking areas; and other common areas. The lease also states, "Any repair or maintenance not specifically provided for above shall be performed and paid for by Tenant."

the property of the other negligently, recklessly or intentionally caused by that party."

In May 2022, CII contacted Brookstone about renewing its lease, but Brookstone did not respond.[3]  Brookstone stopped operating the truck wash in June 2022, but it left materials at the site.  In August, CII served Brookstone with a notice to quit.  In October, CII served Brookstone with a notice that it was in default under the lease.

CII sued Brookstone for breach of contract, claiming Brookstone "caused substantial damage to the property and failed to make required repairs, undertake necessary maintenance, and failed to leave the premises in good condition."  It sought damages for the cost of repairing its building,[4] lost rental income, and attorney fees and costs under the lease.  After a bench trial in March 2024, the court dismissed CII's claim for damages based on the cost of repairing the building based on insufficient evidence.  It awarded CII $2500 in rent for August 2022 minus Brookston's $1450 deposit for a total award of $1050.  Because it concluded that CII did not prevail "in any meaningful way," it declined to award CII attorney fees. After CII moved the court to reconsider, amend, and enlarge its findings, the court awarded CII an additional $19,000 in damages based on Brookstone's admission regarding damage to a knee wall, c-channels, and z-girts.[5]

---

[3] The record suggests that increased water rates made it unfeasible to continue operating an equipment wash at the location.

[4] CII claimed $402,534 in building damage based on an October 2022 estimate. CII later amended its petition to request $412,400 in damage based on a revised estimate of repair costs.

[5] Witnesses described these construction components as part of the outer wall of the building.

**II. Scope and Standard of Review.**

We review breach-of-contract claims tried at law for correction of errors at law. *Dolly Invs., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023). In determining whether substantial evidence supports the district court's findings, the court views the evidence in the light most favorable to the judgment, construing the court's findings liberally to uphold rather than defeat the result. *Hutchison v. Shull*, 878 N.W.2d 221, 230 (Iowa 2016). The question is not whether the evidence supports a different finding but whether it supports the finding made. *Id.* We can reverse if the district court erroneously applied the law in a way that materially affected its decision. *Dolly Invs.*, 984 N.W.2d at 173.

We review the award of attorney fees for abuse of discretion. *NCJC, Inc. v. WMG, L.C.*, 960 N.W.2d 58, 61 (Iowa 2021). We reverse only if the district court's discretionary ruling rests on grounds that are clearly unreasonable or untenable. *Id.*

**III. Damages.**

CII first challenges the amount of damages the trial court awarded.

> The determination of the amount of damages in a bench trial ordinarily lies within the sound discretion of the trial court. This discretion, however, is not without limits. The trial court may not disregard evidence and arbitrarily fix an amount of damage for which no basis in the evidence exists. On the other hand, precision is not required. We will uphold an award of damages so long as the record discloses a reasonable basis for which the award can be inferred or approximated. An award of damages within the range of the evidence will not be disturbed on appeal.

*Hawkeye Motors, Inc. v. McDowell*, 541 N.W.2d 914, 917–18 (Iowa Ct. App. 1995) (internal citations omitted).

We begin with the award for damage that CII alleges Brookstone caused its building. In its petition, CII claimed that Brookstone "used hazardous substances to wash semi-trucks, trailers and tankers, which contributed to and/or caused the erosion and deterioration of the building's components and structural integrity." It also claimed that Brookstone "completely removed the air compressor from the building" without consent. CII argues that the cost of repairing the building to the condition it was in before the lease exceeds $400,000.

CII bases its damage claim on a construction company's bid to repair the building and restore it "back to original condition before building was leased out." The company's original bid for $402,534 was updated one year later to $412,400. The proposed repair involves demolishing CII's building and rebuilding it with a combination of new and salvaged parts. Nick Sieck, the project estimator for the bid, testified that building new would likely be "a little more expensive" but "pretty close" to the cost of repairing the existing building because either approach would require demolishing the existing structure. Sieck estimated that building the same structure new would cost between $115 and $130 per square foot. At 3600 square feet, the new building would cost between $414,000 and $468,000. Although Sieck has ten years' experience as a project estimator, he is not an engineer and could not opine about the building's structural integrity. Sieck also admitted that he did not know the building's condition before Brookstone's lease began.

In contrast, Brookstone hired Rodney Rinehart, a professional engineer and the project manager of a consulting engineering firm, as its expert witness. Rinehart earned a degree in biological and agricultural engineering in 1990 and is experienced with post-engineered metal buildings. He inspected the structural

condition of CII's building in December 2023 and reported his observations and opinions as a professional engineer. Despite the appearance of surface rust on columns and column anchor bolts, Rinehart opined that the building was structurally sound. He also noted that, except for a hole created by a unit heater exhaust duct, the ceiling was in good working condition and the electrical system appeared to be newer.

Rinehart noted that some areas of the building needed nonstructural repair or replacement. He observed that the secondary framing and insulation on the south and southwest sides of the building were more damaged than on the north, northeast, and east sides. Rinehart believed that the secondary framing was corroded beyond repair and needed replacing. He also believed that the X-bracing on the south side needed repair. But Rinehart could not provide an opinion about the cost of those replacements and repairs.

The district court found insufficient evidence to justify the award requested by CII. It noted there is no evidence of the building's value at the time Brookstone returned it to CII or what the value would have been if Brookstone had returned it in the condition required by the lease. Although CII provided evidence of the cost of repair or replacement, the court noted that those costs have no direct correlation to value.

The purpose of awarding monetary damages is to place an injured party in the same position that they would have been in if no wrong occurred. *Hendricks v. Great Plains Supply Co*., 609 N.W.2d 486, 494 (Iowa 2000). "Where the injury is such that the premises may be restored to as good condition as they were before being damaged, the measure of recovery is the fair and reasonable cost and

expense of such restoration." *Id.* But "[t]he general rule in Iowa for repairs or for replacement is the fair and reasonable cost of replacement or repair, but not to exceed the value of the property immediately prior to the loss or damage." *Id*. (quoting *State v. Urbanek*, 177 N.W.2d 14, 16 (Iowa 1970)).

As the district court noted, the record lacks evidence showing the building's value when the lease ended in June 2022 or at any point after. CII argues the value of the building at the time of Brookstone's surrender can be calculated by subtracting the cost of the repair bid from the cost of a new building. To determine what the building's value would have been if Brookstone had repaired and maintained it as required by the lease, CII proposes depreciating the cost of a new building by its age relative to the total years a building of that kind is expected to remain in use. These calculations might have merit if the building was new when Brookstone took possession, but it was not. The building was built in 2005 and used for eight years before Brookstone's lease began in June 2013. More importantly, there is no evidence of the building's condition or value when the lease began. Nor is there evidence of its condition or value at any point before October 2022 that could be used to infer its condition or value in June 2013.[6] *See Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011) (stating that when the amount of damages is uncertain, the plaintiff can still recover if there is proof of a reasonable basis from which it can be inferred or approximated). Instead, CII asks us to determine diminution of value based solely on what it would cost to repair or replace the building after the lease ended. Although some speculation is permitted

---

[6] The record reveals that CII had the building appraised in 2018 to refinance a loan, but the appraisal was not included in the record.

in awarding damages, it is limited. *Id.* (stating that "overly speculative damages cannot be recovered"). Measuring damages in the manner CII suggests requires speculation as to the building's condition when Brookstone took possession in June 2013. As the district court noted in its ruling on CII's motion to enlarge or amend,

> A real estate appraiser would be able to assign a value to the real estate as it stands and estimate its value with a building in the condition the plaintiff claims it should be. The difference in those values might turn out to be equal to the cost of repair, but the court cannot make such a finding on the basis of this record.

Without any evidence to discern the building's value, the district court found Brookstone liable for damage it admitted it caused the knee wall, c-channels and z-girts, and an air compressor. The court awarded CII $3000 for the damage to the knee wall, which it based on the most expensive of the three methods of repair recommended by Rinehart. It also awarded CII $16,000 for the cost of replacing the c-channels and z-girts, which it based on Sieck's bid estimate. Because there is no evidence in the record about the value of the air compressor, the court did not award damages for it. We find no error in the district court's determination. *St. Malachy Roman Cath. Congregation v. Ingram*, 841 N.W.2d 338, 352 (Iowa 2013) ("As a general rule, the party seeking damages bears the burden of proving them; if the record is uncertain and speculative as to whether a party has sustained damages, the factfinder must deny recovery."); *D.R. Mobile Home Rentals v. Frost*, 545 N.W.2d 302, 306 (Iowa 1996) (stating that it is error to award any damages absent actual evidence that damages were sustained). The damage award is in the permissible range of the evidence, and we affirm.

CII also claims it should be awarded $47,500 of lost rental income because it could not rent the building for eighteen months after the lease ended. The district court found no evidence supporting CII's claim that it could not rent the building, citing Rinehart's testimony that "the structural integrity of the building is fine." It also noted that family members of CII's owner used the building for storage after Brookstone vacated the premises. The court found that CII was only entitled to $2500 in unpaid rent for August 2022. Deducting Brookstone's rental deposit of $1450 from this total, it awarded CII $1050. Because substantial evidence supports the district court's award for lost rental income, we affirm.

**IV. Attorney Fees and Court Costs.**

Finally, CII also contends it is entitled to an award of attorney fees and costs under the lease. An award of attorney fees is available when authorized by contract. *See* Iowa Code § 625.22 (2022). CII seeks attorney fees and costs under Paragraph 16 of the lease agreement that covers June 1, 2019, through May 31, 2022. But the district court denied its request, finding an award of attorney fees "would be dependent on CII prevailing." Citing CII's nominal recovery in an action alleging over $400,000 in damages, the court found that CII did not prevail "in any meaningful way." It therefore declined to award CII attorney fees and costs.

Paragraph 16 of the lease allows CII to recover attorney fees and costs if the lease is terminated. That paragraph outlines the events that constitute a default by Brookstone, including failure to pay rent when due, failure to observe or perform any duties imposed on it under the lease, and abandonment of the premises. CII had to give Brookstone a written notice specifying the default and allow ten days for Brookstone to correct it. But if Brookstone failed to remedy the

default, CII could terminate the lease and act to obtain the balance of unpaid rent and any expenses incurred in regaining possession of the premises, including attorney fees and court costs.

Although the lease term expired on May 31, 2022, Paragraph 8 states that Brookstone's continued possession beyond that date, without a written extension or new lease, which would constitute "a month to month extension of the lease." Because Brookstone left property on the premises, CII served Brookstone with a notice in August 2022, demanding payment of rent for June, July, and August. It also demanded that Brookstone "vacate and surrender possession" of the premises if the delinquent rent was not paid within ten days and informed Brookstone that it was in default for damage to the property.

In October 2022, CII served Brookstone with a notice of default, stating that it was in default of the lease for failing to make required repairs and maintenance of the premises and failing to leave the property in good condition. The notice demanded $402,534 to repair the property within ten days or else CII "may elect to pursue any and all remedies available to it." It sued Brookstone for damages one month later.

CII pursued three claims against Brookstone that constitute "an event of default" under the lease. But the lease only allows CII to recover attorney fees and court costs it incurred in collecting unpaid rent and regaining possession of the premises. The district court awarded CII unpaid rent for August 2022 less the security deposit it retained, awarding CII $1050 in damages. CII may recuperate attorney fees and costs related to its recovery of those damages, which includes some fees and costs incurred here, as well as those incurred in serving Brookstone

with the notices in August and October 2022.  We reverse the district court's denial of attorney fees, and we remand to the district court for further proceedings to determine an appropriate award.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**