CENTRAL TRUST COMPANY, Appellee, v. CITY OF DES MOINES, Appellant.

**APPEAL AND ERROR:** Assignment of Errors—Fatal Indefiniteness.
1   An assignment of error which simply asserts that the court erred in overruling a 29-pointed motion is fatally lacking in definiteness. Likewise, statements or propositions of law, without any attempt to apply them to the rulings of the court. (See Book of Anno., Vols. I, II, Sec. 12869.)

**MUNICIPAL CORPORATIONS:** Public Improvements—Substantial
2   Compliance with Contract. Evidence relative to the performance of

a paving contract reviewed, and held to show substantial compliance in the matter of performance.

Headnote 1:   3 C. J. pp. 1357, 1359, 1388.   Headnote 2:   28 Cyc. p. 1062.

Headnote 1:   2 R. C. L. 161.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

NOVEMBER 15, 1927.

Action by assignee of a paving contractor against the city for balance due on contract. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver, Don G. Allen,* and *George W. Vest,* for appellant.

*Miller, Kelly, Shuttleworth & McManus* and *Alex M. Miller,* for appellee.

MORLING, J.—Appellee objects to the sufficiency of the assignments of error. The only errors assigned are:

(a) ''Overruling defendant's motion for a directed verdict (Abstract 56, 57, 58, 59, 60, 61 and Abstract 66, lines 13 to 24) ; (b) overruling the defendant's motion to set aside the verdict, motion for judgment notwithstanding the verdict, motion in arrest of judgment, and motion for new trial (Abstract 152 to 156), for each of the grounds set forth in the motion.''

1. APPEAL AND ERROR: assignment of errors: fatal indefiniteness.

The motion for directed verdict was on 15 grounds; that for new trial, etc., on 29 grounds. The appellant's propositions are such as these:

''There can be no recovery unless the work is completed in strict compliance with the terms of the contract and with the plans and specifications.''

''Acceptance of conditions which are not performed does not establish liability to pay for the work.''

''The contractor waived its claim for extras by not presenting it within the time fixed by the contract, where the city never considered or acted upon the claim.''

"A party is entitled to instructions correctly covering the theory of the case presented by the pleadings and the evidence upon which it was tried, and if the court fails to so instruct, there is reversible error."

These are merely examples. The abstract shows no requests to charge and no exceptions to instructions.

This court reviews the proceedings of the trial court in an action at law for the single purpose of correcting errors. Error is not presumed. It devolves upon the appellant to point out the rulings which he claims to have been erroneous as matter of law. It must appear that proper objections and exceptions were taken. The ruling must be prejudicial. The assignments of error serve the purpose of a bill of complaint. The appellee is interested in sustaining the judgment and the rulings upon which it is based, and is entitled to know wherein the appellant claims that the trial court erred, in order that he may intelligently present his case and endeavor to sustain the judgment in his favor. It is not for the court to search the record for error, or to determine merely abstract propositions of law. It is only as the propositions of law are applicable to the rulings of the trial court that this court should consider them. The court is not limited to the arguments produced by the respective parties, but the court ought not to search for errors in rulings which the appellant refrains from pointing out. The appellant here makes no application of any of its propositions to any of the rulings or grounds of· its overruled motions in the trial court. We are again called on to say that such a blanket assignment of errors points out no ruling for us to review or error to correct. *In re Estate of Mott,* 200 Iowa 948; *In re Estate of Butterbrodt,* 201 Iowa 871; *Reynolds & Heitsman v. Henry,* 193 Iowa 164; *Reynolds v. Chehak,* 199 Iowa 561; *Wine v. Jones,* 183 Iowa 1166, 1175.

The court is reluctant to send a suitor from its bar because of failure to properly or intelligibly present his case. The defendant's principal contention here is that plaintiff's assignor

2. MUNICIPAL CORPORATIONS: public improvements: substantial compliance with contract.
did not perform his contract, one provision of which was that he should perform the work in strict accordance with the contract, plans, and specifications. The contract was for the repair and resurfacing of an old pavement, the kind and condition of

which does not appear, except that the street was narrow and street car tracks were laid upon it. The contract called for an estimated amount of 1,344 boxes of sheet asphalt, more or less, at $13.25 per box (besides other material). The general specifications attacked contained the following:

"Sheet Asphalt Pavement. Upon the concrete foundation, specified heretofore, shall be laid the pavement proper. This shall consist of a binder course one (1) inch in thickness and a wearing surface one and one-half (1½) inches in thickness."

The case was tried on the theory, apparently, that no binder course was required, and that the wearing surface was to be one inch thick. We discover no claim in the trial court to the contrary, and the case is presented here on the complaint that the wearing surface was not uniformly one inch in thickness. The defendant brought out from the contractor on cross-examination:

"The paving was laid according to specifications in every detail. * * * Q. Did the contract provide for the thickness? A. It did. Q. Do you remember what the thickness was that it provided? A. One inch. * * * We did not put on a binder course; we put on a wearing surface. It was one inch thick, as near as they could get it to one inch. * * * some places it would be less than an inch. * * * Q. Now you knew, did you not, that the surface at many places was less than an inch, when you did the work? A. Yes, sir. Q. And you knew that one inch was intended to be the minimum thickness of the wearing surface for practical purposes, did you not? A. Yes, sir."

Another witness for plaintiff testified, on cross-examination:

"At all times I was trying to put in sufficient asphalt to make it one inch thick. I understood that I was expected to put in enough to make at least one inch thick, but I found out I had to put it in to satisfy him [King, deceased city inspector]. Probably some places it did run a little less than an inch."

Another witness for plaintiff testified:

"I don't believe it was an inch thick in the high places over the old foundation."

It appears that the surface of the old base was more or less uneven, as might naturally be expected. The contractor and his employees testified, in substance, that they laid the asphalt

and spread and raked it so as to get it an inch thick, as nearly as they could, and not over an inch.

The city engineer says he was on the job, and made daily reports. The job was accepted, and he afterwards recommended that the acceptance be rescinded. As noted, the contractor was paid by the quantity of material furnished, and not according to area. He was under no temptation, therefore, to scant the quantity of asphalt furnished.

Holes having developed, objection is made to the quality of the mixture. Samples were regularly furnished to the city chemist, as provided in the contract. The city engineer regularly tested the temperature. The contractor testified that the truckman "delivers the load to the city inspector, who then makes a test of it, and if it is still in the condition to lay, they dump it and spread it. But the load is not dumped until the inspector O. K.'s it." The contractor's evidence is that he wanted to heel the wearing surface against the paving bricks laid alongside the car tracks with a greater thickness, but that he was not permitted to do so by the inspector, and that he took the matter to the city council. He says:

"The street was very narrow, and along the street car tracks those big trucks come down, and I thought that we ought to go back anyhow eighteen inches, and put it a couple of inches thick. * * * in the wintertime I knew by experience that, when they run the snow off of the street car track, all the traffic comes along down the track, and one wheel always comes about that far from the edge of the track. And they have them big chains on, which tear—they was only laying it about an inch thick. I wanted to lay it about two inches thick, cut it back and lay it new in there, so it would stand up, so those big trucks would not cut it out. * * * He [King] said he had been instructed how to do this."

The job came to upwards of $29,000, all of which was paid, except about $1,200 principal, sued for. The plaintiff's contention is that the fault was with the plans, and not with the work. The case was submitted to the jury without exception, on the theory that substantial compliance with the contract was sufficient.

A perusal of the record reveals no merit in the appeal.

Our investigation of the record is not to be taken as a precedent for permissive violation of the rules.—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.