# IN THE COURT OF APPEALS OF IOWA

No. 19-1192
Filed August 5, 2020

**LARRY CLEMENT and CLEMENT AUTO & TRUCK, INC.,**
    Plaintiffs-Appellants,

**vs.**

**GRANT IRWIN, individually, and IRWIN AUTO CO. OF FORT DODGE, LLC,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Webster County, Adria Kester, Judge.

Larry Clement and Clement Auto & Truck, Inc. appeal the district court's ruling on an action against Grant Irwin and Irwin Auto Co. of Fort Dodge, LLC to collect payments owed under the parties' agreement. **AFFIRMED.**

Justin L. Sullivan of Whitfield & Eddy, P.L.C., Des Moines, for appellants.

Eric M. Updegraff of Hopkins & Huebner, P.C., Des Moines, for appellees.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

This is a contract dispute. Larry Clement and Clement Auto & Truck, Inc. (Clement) claim a contract required Grant Irwin and Irwin Auto Co. of Fort Dodge, LLC (Irwin) to pay interest on an unpaid balance. We disagree and affirm.

## I. Facts and Prior Proceedings

In 2003, Clement sold a General Motors (GM) dealership to Irwin via an asset purchase agreement. In 2007, Clement and Irwin signed a second agreement to facilitate Irwin's sale of the dealership to a third party and to ensure Irwin's payment of the balance due to Clement under the 2003 agreement.

Among other things, the 2007 agreement required Irwin to acquire registered securities and hold them in a "Bond Company," which is sometimes referred to as a "Bond Trading Company." Here is the relevant provision:

> **1. Bond Company.** Irwin Auto Co. is utilizing funds from the sale of the Fort Dodge GM franchises and other related assets to acquire registered securities. This "Bond Trading Company" shall own bonds in GM, GMAC, Ford, Ford Motor Credit or such other bonds of equal or greater value. Irwin shall send to Clement a monthly accounting of the Bond Company beginning September 1, 2007 and each month thereafter on the 1st of the month. Irwin shall maintain a minimum of 1.5 million of par value of General Motors or Ford Motor Co. registered securities in the Bond Company.

The 2007 agreement also required Irwin to pay Clement "$1,000,000 on or before September 15, 2015," unless GM "file[d] bankruptcy," in which case Irwin would "have an additional 5 years to pay" the sum. In 2009, GM filed a bankruptcy petition. This triggered the five-year extension.[1]

---

[1] The parties stipulated that the payment is not due until September 15, 2020. It was also essentially undisputed that GM's bankruptcy did not extinguish the $1,000,000 debt.

In 2016, Clement sued Irwin for breach of the agreements. Clement alleged in part that Irwin "fail[ed] to perform . . . the term of payment of interest." The parties agree that Clement's interest claim turns on the following paragraph in the 2007 agreement:

> **4. <u>Remaining Amounts Due by Irwin</u>.** [(**1**)] Irwin shall pay Clement $1,000,000.00 on or before September 15, 2015. [(**2**)] If GM or Ford should file bankruptcy, Irwin shall have an additional 5 years to pay the $1,000,000.00. [(**3**)] Irwin shall pay interest as originally agreed in the Asset Purchase Agreement dated March 27, 2003 for every day after September 15, 2015. [(**4**)] The interest rate shall be the prime rate of interest as quoted by the Wall Street Journal. [(**5**)] In the event that the total value of all the bonds are not in bankruptcy the same shall be liquidated and Irwin shall pay Clement the total dollar amount to the extent possible as much of the $1,000,000.00 obligation as is available. [(**6**)] For example, if on September 15, 2015 Ford is in bankruptcy but GM and the other bonds held by the "Bond Trading Company" are not in bankruptcy and have a value of $900,000.00, Irwin shall pay Clement immediately $900,000.00. [(**7**)] Irwin shall have within the five (5) year period to pay the remaining $100,000.00 after Ford comes out of bankruptcy. [(**8**)] If Ford is liquidated Irwin must pay the remaining $100,000.00 plus interest before the end of five (5) years. [(**9**)] In the event that a bankruptcy of Ford or GM results in their liquidation rather than restructuring, Irwin shall personally pay Clement $1,000,000.00 on or before September 15, 2020. [(**10**)] In the event that Irwin should die, the $1,000,000.00 or the present value thereof is immediately due and payable to Clement.

The district court focused mainly on the ninth sentence, which addressed the potential that GM would file a bankruptcy petition resulting in liquidation rather than restructuring. Following a bench trial, the district court concluded the agreements did not support Clement's claim for interest. The court determined GM's "bankruptcy resulted in liquidation" and, therefore, "no provision in the agreement" required payment of interest.

Clement appeals.

## II. Standard of Review

Our review is for correction of errors at law. *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013). "We do not presume error." *State v. Cook*, 330 N.W.2d 306, 313 (Iowa 1983); *accord Cent. Tr. Co. v. City of Des Moines*, 216 N.W. 41, 42 (Iowa 1927) ("Error is not presumed."). Instead, we presume the district court's ruling was correct. *McKinney v. Hartman*, 3 Iowa 344, 345 (1856); *see Cass Cty. v. Audubon Cty.*, 266 N.W. 293, 296 (Iowa 1936) (noting "the presumption that the action of the court was regular and lawful in all respects"). We will affirm if the appellant fails to demonstrate error. *See, e.g.*, *Struve v. Struve*, 930 N.W.2d 368, 378 (Iowa 2019) (noting the "burden rests upon the appellant . . . to establish error"); *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 140 (Iowa 2013) ("[T]he burden rests upon the appellant not only to establish error but to further show that prejudice resulted." (alteration in original) (citation omitted)); *Swartz v. Bly*, 183 N.W.2d 733, 740 (Iowa 1971) (noting "[t]he burden is on appellant to demonstrate error" (citation omitted)); *State Auto. & Cas. Underwriters by Auto. Underwriters v. Hartford Accident & Indem. Co.*, 166 N.W.2d 761, 766 (Iowa 1969) (noting "[t]he burden is on appellant to demonstrate error" (citation omitted)); *Newmire v. Maxwell*, 161 N.W.2d 74, 80 (Iowa 1968) (noting "[t]he burden rests upon appellant to demonstrate error"); *Stake v. Cole*, 133 N.W.2d 714, 719 (Iowa 1965) (noting "[t]he burden is on appellant to demonstrate error"); *Hot Spot Detector, Inc. v. Rolfes Elecs. Corp.*, 102 N.W.2d 354, 360 (Iowa 1960) (noting "[t]he burden is upon an appellant to demonstrate error"); *In re Behrend's Will*, 10 N.W.2d 651, 655 (Iowa 1943) ("Errors are not presumed and the burden rests upon the appellant not only to establish error but to further show that prejudice

resulted."); *Morrison ex rel. Estate of Morrison v. Grundy Cty. Rural Elec. Coop.*, No. 17-1001, 2019 WL 320178, at *4 n.8 (Iowa Ct. App. Jan. 23, 2019) ("As appellants, the Morrisons bear the burden of proving each alleged error on the record made at trial."); *B&F Jacobson Lumber & Hardware, L.L.P. v. Acuity, a Mut. Ins. Co.*, No. 16-1134, 2017 WL 6513961, at *3 (Iowa Ct. App. Dec. 20, 2017) ("[T]he burden rests upon the appellant not only to establish error but to further show that prejudice resulted." (alteration in original) (citation omitted)).

### III. Discussion

On appeal, Clement contends substantial evidence does not support the district court's conclusion that GM's bankruptcy resulted in its liquidation. Clement also contends substantial evidence does not support the district court's conclusion that interest is not owed. We address each contention in turn.

#### A. Liquidation

We begin with Clement's claim that the district court erred by concluding GM's bankruptcy resulted in its "liquidation." In Clement's view, substantial evidence did not support this conclusion.[2]

Like so many words, "liquidation" can mean different things in different contexts. *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, 502 B.R. 383, 393 (Bankr. S.D.N.Y. 2013) ("The word 'liquidation,' in the context of Section 560 [of the

---

[2] "The district court's factual findings have the effect of a special verdict and are binding on us if supported by substantial evidence." *Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019). "Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings. Evidence is not insubstantial merely because it would have supported contrary inferences." *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 490 (Iowa 2000) (citation omitted).

Bankruptcy Code] means, according to the dictionary definition, the act of determining by agreement the exact amount of something that otherwise would be uncertain." (footnote omitted)). For example, a 2009 version of Black's Law Dictionary offered these definitions of "liquidation":

> 1. The act of determining by agreement or by litigation the exact amount of something (as a debt or damages) that before was uncertain. 2. The act of settling a debt by payment or other satisfaction. 3. The act or process of converting assets into cash, esp. to settle debts.

*Id.* at 393 n.17 (quoting *Liquidation*, *Black's Law Dictionary* (9th ed. 2009)).

So before Clement can demonstrate that the district court erred by finding "liquidation" occurred, Clement must first establish what "liquidation" means for purposes of the 2007 contract. In other words, Clement must begin with *contractual interpretation*. As Irwin correctly notes, "[t]he term 'liquidation' is a term used in the contract for purposes triggering certain obligations. It is virtually meaningless for [Clement] to claim a lack of substantial evidence to find a 'liquidation' without discussing the legal principles governing the interpretation of the word 'liquidation.'"

Clement has not done so. Clement does not provide a definition for the term "liquidation" as it appears in the 2007 contract. Nor does Clement provide authorities or analysis to help us determine what "liquidation" means in that context. Nor does Clement address Irwin's argument that, because Clement's counsel drafted the 2007 contract, any ambiguity as to the contract's meaning should be strictly construed against Clement. *See, e.g.*, *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 416 (Iowa 1997) ("Any ambiguities in the contract are strictly construed against the drafter.").

Instead, Clement focuses on the opinions of bankruptcy expert Eric Lam. He opined "the General Motors bankruptcy case was clearly a restructure proceeding, and was not a liquidation." But Lam confirmed that he did "not intend to offer any opinions concerning the meaning of the July [] 2007[] agreement." And Clement admits Lam did not testify "as to the meaning of the" parties' contract.[3]

Because Clement has not shown what "liquidation" means for purposes of the 2007 contract, Clement has not shown the district court erred by concluding "liquidation" occurred.

## B. Interest

We turn next to Clement's claim that the district court erred by finding "there is no provision for the payment of interest from September 15, 2015." Like the "liquidation" issue, this issue turns on paragraph four in the 2007 agreement. At first blush, the third sentence of paragraph four would appear to require the payment of interest. It states "Irwin shall pay interest as originally agreed in the Asset Purchase Agreement." As Irwin points out, though, the 2003 asset purchase agreement does not provide for interest payments on the $1,000,000 obligation.

---

[3] In our own efforts, we have struggled to reconcile Lam's opinions with the contract's language. Lam testified that "a liquidation means something like you disappear from the face of the earth, so to speak." And, Lam emphasized, the GM *brand* clearly survived the bankruptcy because "today there are General Motors cars being driven, being sold." It is not clear, however, that the 2007 contract was concerned about "liquidation" of the GM *brand*, as opposed to the old GM *company* that existed in 2007. Consider, for example, the "GM" bonds referenced in the contract. Those bonds were issued by a *company*, not a *brand*. Moreover, Irwin correctly notes, "[a] 'brand' does not declare bankruptcy." Rather, it was the old GM company that declared bankruptcy. And Lam acknowledged that the GM bankruptcy plan called for the "General Motors Corporation" that "existed in 2007" to "be dissolved."

Still Clement argues that, assuming the district court was correct in finding "liquidation" occurred, interest is authorized by the eighth sentence. It states: "If Ford is liquidated Irwin must pay the remaining $100,000.00 plus interest before the end of five (5) years." Although the eighth sentence refers to Ford and not GM, Clement says Ford is just used as an example of what would happen if either company filed for bankruptcy and was liquidated. Maybe so. But the ninth sentence explicitly addresses the consequence of a bankruptcy filing by GM resulting in liquidation. Because it is more specific than the eighth sentence, the ninth sentence controls. *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 688–89 (Iowa 2020). And the ninth sentence says nothing about interest.[4] So the district court did not err in concluding there is no provision for interest.

Because Clement has not demonstrated error by the district court, we affirm.

**AFFIRMED.**

Doyle, J., concurs; Vaitheswaran, P.J., dissents.

---

[4] The ninth sentence states: "In the event that a bankruptcy of Ford or GM results in their liquidation rather than restructuring, Irwin shall personally pay Clement $1,000,000.00 on or before September 15, 2020."

**VAITHESWARAN, Presiding Judge** (dissenting).

I respectfully dissent. GM's bankruptcy was unique.[5] Clement called an expert in bankruptcy law who testified to its unique character. He opined, "the General Motors bankruptcy case was clearly a restructure proceeding, and was not a liquidation." He reasoned as follows:

> [S]tep one is you look at what was filed, and you figure out that [a Chapter] 11 [bankruptcy proceeding] is probably not a liquidation, typically. Step two, then you look at what actually was done, and where you look is the disclosure statement. And so I look at a disclosure statement, I realize that there was an order approving the disclosure statement, and the important part of the disclosure statement is it referred to, as we mentioned earlier, the [United States Code] Section 363 sale. And that's an opinion from the judge approving that sale. And so if you look at the disclosure statement, the order approving the Section 363 sale, and then the plan, my conclusion is that the result of the General Motors bankruptcy proceeding was a restructure, not the liquidation.

---

[5] The initial bankruptcy order approving the sale of GM assets was admitted as an exhibit. *See In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) (case history citations omitted). The order provided a detailed description of (1) GM's "severe liquidity crisis"; (2) the U.S. Government's intervention; (3) the President's description of the conditional assistance that would be provided ("But rather than leaving GM to simply go into liquidation, the President stated that the U.S. Government would provide assistance to avoid such a result, *if* GM took the necessary additional steps to justify that assistance . . . ."); (4) the reasons for rejecting "the liquidation alternative," in particular that it would not protect unsecured creditors; and (5) the approval of a "363 Transaction," which would facilitate the purchase of GM's assets and the creation of a "new GM." *Id.* at 476–87; *see also In re Motors Liquidation Co.*, 829 F.3d 135, 145–46 (2d Cir. 2016) ("Through this proposed sale, Old GM was attempting not a traditional Chapter 11 reorganization, but a transaction pursuant to 11 U.S.C. § 363—a less common way of effecting a bankruptcy. . . . [I]n a § 363 sale of substantially all assets, the debtor does not truly 'reorganize.' Instead, it sells its primary assets to a successor corporation, which immediately takes over the business. . . . The proposed sale would leave Old GM with some assets . . . .").

Based on his testimony, I would conclude that GM's bankruptcy, referenced in the ninth sentence of paragraph four, resulted in a restructuring rather than a liquidation. I would reverse and remand for entry of an order requiring Irwin to pay interest "for every day after September 15, 2015," at the "prime rate of interest as quoted by the Wall Street Journal."